**Ex parte William Danny WAGNER, Relator.**

**No. 14–95–00036–CV.**

Court of Appeals of Texas, Houston (14th Dist.).

Aug. 31, 1995.

Rehearing Overruled Sept. 28, 1995.

---

Bernadette JohnLewis, Houston, for appellants.

Sharron K. Wall, David W. Simpson, Houston, for appellees.

Before YATES, FOWLER and DRAUGHN,* JJ.

* Justice Joe L. Draughn sitting by assignment.

## OPINION

FOWLER, Justice.

This is an original habeas corpus proceeding. Relator, William Danny Wagner, seeks relief from a contempt and commitment order entered by the 309th Judicial District on January 10, 1995, in cause number 91–04642. We granted relator's petition for writ of habeas corpus on January 11, 1995, and ordered him released on bond pending our determination on the merits. *See* TEX.GOV'T CODE ANN. § 22.221(d) (Vernon Supp.1995). Because we hold that incarcerating one for failing to pay attorney's fees awarded in a paternity action filed to obtain child support does not violate Texas' constitutional prohibition against imprisonment for debt, we deny the writ.

### FACTUAL AND PROCEDURAL BACKGROUND

The Harris County Domestic Relations Office was retained by Karen Annette Thomas to file a petition to establish the paternity of S.M.W. On April 13, 1993, the trial court signed a Modified Decree of Paternity (the decree). The decree established relator as the father of S.M.W. In addition, the decree resolved custody, access to the child, and child support. The decree also contained an order requiring relator to pay attorney's fees as "additional child support" to the Harris County Domestic Relations Office. The decree stated, in pertinent part:

> It is therefore **ORDERED, ADJUDGED, and DECREED that reasonable and necessary attorney's fees of $2,950.00 are adjudged against WILLIAM DANNY WAGNER, RESPONDENT/OBLIGOR, as additional child support,** and reduced to a money judgment in favor of the HARRIS COUNTY DOMESTIC RELATIONS OFFICE, attorneys for PETITIONER/OBLIGEE, and against WILLIAM DANNY WAGNER, RESPONDENT/OBLIGOR, together with interest at the legal rate of 10% per annum, for which let execution issue. It is **further ORDERED that WILLIAM DANNY WAGNER, RE-**

SPONDENT/OBLIGOR, shall pay reasonable and necessary attorney's fees of $2,950.00, as additional child support, directly to the HARRIS COUNTY DOMESTIC RELATIONS OFFICE, 49 San Jacinto, Room 301, Houston, Texas 7002, by cash, cashier's check or money order, payable as follows: in installments of $100.00 each, due on the 15th day of each month, with the first installment due April 15, 1993, and a like installment of $100.00 due each 15th day of each month thereafter, until paid in full. It is ORDERED that if WILLIAM DANNY WAGNER pays said attorney's fees installments timely and in full, by paying each installment of $100.00 on or before the 15th day of each month, as hereinabove ordered, the interest on said judgment shall be deemed satisfied. It is further ORDERED that upon WILLIAM DANNY WAGNER'S failure to pay any one attorney's fee installment timely and in full, as hereinabove ordered, interest on said judgment shall accrue at the legal rate as stated from the date this order is signed, until said judgment is satisfied in full. (emphasis added)

Relator failed to make any attorney's fees payments during the period from April 15, 1993, to September 15, 1993. Based on this failure, the Harris County Domestic Relations Office filed a motion for enforcement and requested that the trial court hold relator in contempt for disobedience of that portion of the decree requiring relator to pay attorney's fees.

A hearing was held on January 10, 1995. Prior to the hearing, relator filed Special Exceptions and a Motion to Strike (Dismiss) the motion filed by the Harris County Domestic Relations Office. In that document, relator argued that the court could not hold him in contempt for failure to pay the $2,950.00 in attorney's fees because that amount represented a debt rather than child support. The court denied relator's motion citing section 13.42(c) of the Texas Family Code. The trial court held relator in contempt for fourteen separate violations of the decree. The court committed relator to the Harris County Jail for 180 days and ordered that he remain there until he purged himself

of the contempt as provided in the order. On January 11, 1995, relator filed a petition for writ of habeas corpus. We granted the writ, ordered relator released on bond, and set the case for oral argument.

## THE PARTIES' CONTENTIONS

In his petition for writ of habeas corpus, relator contends the trial court could not, as a matter of law, hold him in contempt. Relator has divided his contention into four arguments:

(1) The $2,950.00 represents a debt owed to the Harris County Domestic Relations Office and as a matter of law cannot be characterized as child support;

(2) The decree ordering Respondent to pay $2,950.00 as child support is void as a matter of law because the trial court abused its discretion in characterizing the $2,950.00 as child support;

(3) Because the decree is void, any contempt judgment would be, as a matter of law, void; and

(4) Enforcement of the decree by contempt was an abuse of discretion.

While relator has separated his contention into four separate arguments, it is clear that his basic claim is that the trial court could not hold him in contempt and incarcerate him because the $2,950.00 was merely a debt, improperly characterized as child support, and that such incarceration violates Article one, section eighteen of the Texas Constitution. In response, the Harris County Domestic Relations Office cites TEX.FAM.CODE ANN. § 13.42 (Vernon Supp.1995) and argues it supports the trial court's action.

## THE ISSUE

The specific question before this court is whether a trial court can hold a father in contempt and incarcerate him for failure to comply with a court's order requiring that he pay attorney's fees incurred in a paternity suit brought under section 13.42 of the Texas Family Code, or whether such incarceration is imprisonment for debt which is prohibited by article I, section 18 of the Texas Constitution.

## THE APPLICABLE LAW

### 1. Standard of review.

 An original habeas corpus proceeding is a collateral attack on the contempt judgment. *See Ex parte Rohleder*, 424 S.W.2d 891, 892 (Tex.1967) (orig. proceeding). The relator must conclusively establish the he is entitled to the writ. *Ex parte Crawford*, 506 S.W.2d 920, 922 (Tex.Civ.App.— Tyler 1974, orig. proceeding). A court will issue a writ of habeas corpus if the order, judgment, or decree underlying the contempt is void, *see Ex parte Shaffer*, 649 S.W.2d 300, 302 (Tex.1983), or if the contempt order itself is void. *Ex parte Gordon*, 584 S.W.2d 686, 688 (Tex.1979). An order is void if: (1) it is beyond the power of the court to enter it; or (2) it deprives the relator of liberty without due process. *Ex parte Friedman*, 808 S.W.2d 166, 168 (Tex.App.—El Paso 1991, orig. proceeding).

### 2. Constitutional prohibition against imprisonment for debt.

 Article I, section 18 of the Texas Constitution provides that "No person shall ever be imprisoned for debt." Tex. Const. art. I, § 18. This provision of the Texas Constitution was first enacted in the Constitution of the Republic of Texas and was a reaction to the "useless and often cruel" imprisonment of those who were unable to pay their debts. Tex. Const. of 1836, Declaration of Rights, Twelfth (stating, "No person shall be imprisoned for debt in consequence of inability to pay."); Tex. Const. art. I, § 18, interp. commentary (Vernon 1984).[1] An order of confinement for failure to pay a debt violates article I, section 18, is void, and may be attacked in a habeas corpus proceeding. *Ex parte Jackson*, 590 S.W.2d 775, 776 (Tex.Civ. App.—El Paso 1979, orig. proceeding).

### 3. Exceptions to prohibition against incarceration for debt.

Since the promulgation of this article I, section 18, Texas courts have recognized that certain monetary obligations are not debts under this provision, and thus, are enforceable through contempt and punishable by imprisonment. For example, Texas courts have recognized that criminal fines are not debts and incarceration for failure to pay those fines is not constitutionally prohibited. *E.g., Dixon v. State*, 2 Tex. 481 (1847); *Lyons v. State*, 835 S.W.2d 715, 718 (Tex. App.—Texarkana 1992, pet. ref'd). Texas courts have also ruled that obligations to pay temporary alimony are not debts. *Ex parte Davis*, 101 Tex. 607, 612, 111 S.W. 394, 396 (1908). In *Davis*, the supreme court held that a husband could be found in contempt and imprisoned for failure to pay temporary alimony pursuant to a court's order. 111 S.W. at 396. The court reasoned that temporary support was not a debt; rather, it was the natural and legal duty owed by a husband to his wife and therefore, did not "come within the prohibition of the Constitution." *Id.*

 Another exception to the constitutional prohibition, based on the same reasoning as the court used in *Davis*, is incarceration for failure to pay child support. It has long been the law in Texas that the courts are empowered to imprison a person for contempt of court for failure to pay child support in accordance with a valid court order. *E.g., Ex parte Birkhead*, 95 S.W.2d 953, 954 (Tex.1936). Incarceration based on a finding of contempt for failure to pay child support does not violate article I, section 18. *Id.* Public policy imposes an obligation upon parents to support their children; thus, child support payments are not considered a debt, but a legal duty. *Ex parte McManus*, 589

---

1. So common was the practice, that some authorities claim that debt led to more imprisonment than any other crime. *Id.*; Jeff Lefkowitz, Note, *Property Division Obligations and the Constitutional Prohibition of Imprisonment for Debt*, 58 Tex.L.Rev. 1307, 1309–10 (1980) (in some eastern states in the early 1800s, three to five times more people were imprisoned for debt than for crimes). Imprisoning debtors dates back to at least early Roman times. *Id.* at 1309 n. 16 (citing Ford, *Imprisonment for Debt*, 25 Mich.L.Rev. 24, 28 (1926)). Under early Roman law, a creditor could arrest and detain a debtor for sixty days after securing a judgment. *Id.* If the debtor still had not paid at the end of the sixty days, the debtor could be killed and his body divided into pieces proportionate to each competing creditor's claim. *Id.*

S.W.2d 790, 792 (Tex.Civ.App.—Dallas 1979, orig. proceeding).

Further, the courts have held that a contemnor's constitutional freedom from imprisonment for debt is not violated by a contempt order enforcing a child support judgment which includes attorney's fees. *Ex parte Helms,* 259 S.W.2d 184, 188 (Tex.1953). The reasoning behind *Helms* and the numerous other Texas cases that authorize a court to incarcerate for failure to pay attorney's fees in a suit to enforce child support obligations is that attorney's fees and costs are incidental to and a part of the child support obligation. *See id.* In these cases, the fees and costs are seen as a means of enforcing the performance of a legal duty owed to the child which constitutes the duty to support. *See also McManus,* 589 S.W.2d at 792. This state has unceasingly permitted imprisonment for failure to pay child support, as well as the attorney's fees incurred while attempting to enforce support obligations, because of the strong public policy in favor of a parent's duty to support his or her children. *Tamez v. Tamez,* 822 S.W.2d 688, 691 (Tex.App.— Corpus Christi 1991, writ denied).

**4. Paternity suits, attorney's fees, and Tex.Fam.Code Ann. § 13.42.**

Parents have a legal duty to support their children. Tex.Fam.Code Ann. §§ 4.02 and 12.04 (Vernon 1993 & Supp.1995). But when the identity of a child's father has not been legally established, a paternity action must be filed before a mother can obtain, much less enforce, a child support obligation. A paternity action enforces a father's legal duty to support his child by adjudicating the very existence of parenthood. Thus, a paternity action is by its very nature an enforcement proceeding; a proceeding that recognizes a man as a child's father and enforces his legal obligation to support his child.

■ To hold that public policy favors a party being held in contempt and incarcerated for failing to pay attorney's fees incurred in a child support enforcement proceeding, but does not favor a party being held in contempt and incarcerated for failing to pay attorney's fees incurred in a suit to establish paternity would be taking inconsistent positions. A paternity action is the vehicle through which the child, or a party on behalf of the child, is able to establish responsibility for child support and thereby ultimately obtain it. Attorney's fees awarded in a paternity action are a necessary means of enforcing a father's obligation to support his children. Therefore, we hold that incarcerating a contemnor for failing to pay attorney's fees incurred in a paternity action does not violate article I, section 18 of the Texas Constitution.

The Harris County Domestic Relations Office argues that relator can be held in contempt and incarcerated for failure to pay attorney's fees based on sections 13.42(b) and (c) of the Family Code. Section 13.42(b) provides that the court may award reasonable attorney's fees incurred in a suit to establish paternity. Tex.Fam.Code Ann. § 13.42(b) (Vernon Supp.1995). Section 13.42(c) states that any payment awarded under section (b) is enforceable as provided in "Subchapter B of Chapter 14" of the Family Code. Tex.Fam.Code Ann. § 13.42(c) (Vernon Supp.1995). Subchapter B of Chapter 14 contains the provisions for enforcement of court orders for child support and visitation, including provisions for contempt. *See generally* Tex.Fam.Code Ann. § 14.30– 14.52 (Vernon 1986 & Supp.1995).[2]

While section 13.42 does provide for the award and enforcement through Chapter 14,

**2.** On April 20, 1995, the Texas Legislature recodified the Texas Family Code by reenacting Title 2 and adding Title 5. Act of April 20, 1995, ch. 20, § 1, 1995 Tex.Sess.Law Serv. 113 (Vernon). This recodification was effective immediately. *Id.* at 282. Under the recodification, section 13.42 now appears in Chapter 160, section 160.005. *Id.* at 209. A proceeding pending on the effective day of the Act is governed by the law in effect at the time the proceeding was commenced. *Id.* at 282. The present proceeding was commenced before April 20, 1995, and is, therefore, subject to the Family Code provisions in effect before recodification. We note, however, that section 13.42 has been changed and no longer provides for an award of attorney's fees in a paternity suit and obviously no enforcement of such fees under Chapter 14. Because our holding is not based on section 13.42 in its past or present form, any change is irrelevant to our decision.

Chapter 14 does not specifically provide that child support and attorney's fees incurred in the enforcement of support are not debt, and therefore, not violative of the constitutional mandate against imprisonment for debt. The proposition that child support and attorney's fees incurred in enforcement of child support are not debt, and thus, do not offend article I, section 18 is based on case law and the public policy that parents have a duty to support their children. *E.g., Helms,* 259 S.W.2d at 188.

Thus, we do not base our decision on section 13.42 of the Family Code; rather, we base our holding on case law, the reasoning contained in that case law, and public policy. Consequently, we overrule relator's contentions that his incarceration violated the Texas Constitution and is void.

Relator's writ of habeas corpus is denied, his bond is revoked, and he is remanded to the custody of the Harris County Sheriff.