**In the Interest of M.W.T., a Child.**

No. 04–98–00754–CV.

Court of Appeals of Texas, San Antonio.

Jan. 26, 2000.

Karl E. Hays, Law Offices of Edwin J. (Ted) Terry, Jr., Austin, Victor Hugo Negron, Jr., San Antonio, for Appellant.

Peter Y. Henry, San Antonio, for Appellee.

Sitting: PHIL HARDBERGER, Chief Justice, CATHERINE STONE, Justice, SARAH B. DUNCAN, Justice.

## OPINION

Opinion by: PHIL HARDBERGER, Chief Justice.

Michael Wayne Terry, Sr. ("Terry") appeals the trial court's decree of paternity that assessed current and retroactive child support against him. Terry asserts that:

1) the trial court erred by rendering an order establishing a parent-child relationship between Terry and M.W.T. because a parent-child relationship already existed as a matter of law and the trial court lacked jurisdiction to render a paternity decree;

2) the trial court erred in ordering Terry to pay retroactive child support; and

3) the trial court erred by ordering Terry to pay current child support for M.W.T.

### BACKGROUND

Deborah Marie Spence ("Spence") gave birth to M.W.T. in 1979. In 1997, before M.W.T. reached eighteen years of age, Spence filed a Petition to Establish Paternity. In the petition, she sought an order naming Terry as the father of M.W.T. and ordering him to pay retroactive child support. Spence requested the court to order child support and medical support for M.W.T. to be continued beyond minority because of his alleged disability (Oppositional Defiant Disorder).

Terry concedes that he is the father of M.W.T. He had provided regular support to Spence in the past for M.W.T. totaling $46,332.

The trial court decreed that Terry is the father and ordered *additional* retroactive support in the amount of $42,608. The court found that M.W.T. is over the age of eighteen, the disability currently exists, and the disability existed before M.W.T. turned eighteen. As a result, the court ordered Terry to pay *current* child support in the amount of $470 per month. Terry appeals.

### DISCUSSION

#### 1. Entry of the Paternity Decree

In his first issue, Terry alleges that because he was already the presumed father, the trial court did not have jurisdiction to enter a paternity decree. According to Terry, "no provision of the Texas Family Code authorizes a paternity action that essentially does nothing more than ratify a pre-existing presumption of paternity." We disagree.

#### a. Standard of Review

■ Whether a trial court has subject matter jurisdiction is a question of law subject to de novo review. *See Estate of Arlitt v. Paterson*, 995 S.W.2d 713, 717 (Tex.App.-San Antonio 1999, pet. denied). In the present case, the issue appears to be whether a father's presumed paternity divests the trial court of jurisdiction to enter a decree of paternity.

#### b. Role of Presumptions and the Legal Finding of Parenthood

■ Presumptions regarding paternity guide the burden-shifting process. A man is presumed to be the father of a child under certain circumstances. *See* TEX. FAM.CODE ANN. § 151.002 (Vernon Supp. 2000). Having been named as father on M.W.T.'s birth certificate, Terry is M.W.T.'s presumptive father. *See id.* § 151.002(b). This presumption *may be*

rebutted under Section 160.110; a man who is a child's presumed father has the burden of proof (by clear and convincing evidence) to prove that he is *not* the father. *See* TEX. FAM.CODE ANN. § 160.110(a) (Vernon Supp.2000).

■ A court does not lose jurisdiction to enter a decree of paternity if the father who is before the court is the "presumed" father, even if the presumption is not contested (or in this case, judicially admitted). The Fourteenth Court of Appeals has stated:

> [W]hen the identity of a child's father has not been *legally established*, a paternity action *must be filed* before a mother can obtain, much less enforce, a child support obligation. *A paternity action enforces a father's legal duty to support his child by adjudicating the very existence of parenthood.* Thus, a paternity action is by its very nature an enforcement proceeding; *a proceeding that recognizes a man as a child's father* and enforces *his legal obligation* to support his child.

*Ex parte Wagner*, 905 S.W.2d 799, 803 (Tex.App.-Houston [14th Dist.] 1995, no pet.) (emphasis added). At issue in *Wagner* was whether the father could be incarcerated for failing to pay attorney fees in a paternity suit. *See id.* The *Wagner* court stated, "A paternity action is the vehicle through which the child, or a party on behalf of the child, is able to establish responsibility for child support and thereby ultimately obtain it." *Id.* The court stated that because a party may be incarcerated for failing to pay attorney fees in a child support enforcement proceeding, a party may also be incarcerated for failing to pay attorney fees in the paternity suit. *See id.* The court reached this result because the paternity suit forms the basis for ordering child support. *Cf. id.*

■ The record does not reflect that Terry executed a Voluntary Acknowledgment of Paternity under Sections 160.201–16 of the Texas Family Code. Such a vol-

untary acknowledgment, properly executed and filed would have become "a legal finding of paternity equivalent to a judicial determination." JOHN J. SAMPSON ET AL., TEXAS FAMILY CODE ANNOTATED 644 (1999).

#### c. *Texas Family Code*

Section 160.006(b) states that "[t]he effect of an order declaring that an alleged parent is the biological parent of the child is *to confirm or create* the parent-child relationship between the parent and the child for all purposes." TEX. FAM.CODE ANN. § 160.006(b) (Vernon 1996) (emphasis added). The plain language of the statute contemplates the possibility that an acknowledged parent-child relationship may be the subject of a judicial decree.

#### d. *Summary*

We conclude the trial court had jurisdiction over this paternity suit. Terry's status as M.W.T.'s father was presumed, and not enforceable, until the court entered the decree of paternity.

### 2. *Order to Pay Retroactive Child Support*

In his second issue, Terry complains that the trial court erred by ordering him to pay retroactive child support. He claims that the trial court abused its discretion by disregarding the intent of the guidelines. In particular, he complains that the trial court did not make a determination regarding 1) whether Spence notified Terry regarding paternity, or 2) whether Terry made any attempt to support M.W.T. Terry also maintains that the trial court erred by failing to find that Spence's claim for retroactive child support was barred by estoppel and laches.

#### a. *Standard of Review*

██ A trial court's order on child support is subject to an abuse of discretion standard of review. *See Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex.1990) (per curiam). A trial court abuses its discretion as to factual matters only when it

acts unreasonably or arbitrarily. *See Walker v. Packer*, 827 S.W.2d 833, 840 (Tex.1992). A trial court abuses its discretion as to legal matters when it fails to analyze or apply the law correctly. *See id.* The trial court has wide discretion in determining the amount of retroactive child support, if any, to be ordered. *See* TEX. FAM.CODE ANN. § 154.131(a) (Vernon 1996); *In re J.H.*, 961 S.W.2d 550, 551 (Tex.App.-San Antonio 1997, no pet.).

#### b. *Application of Guidelines*

Section 154.131(b) states:

(b) In ordering retroactive child support, the court shall consider the net resources of the obligor during the relevant time period and whether:

(1) the mother of the child had made any previous attempts to notify the biological father of his paternity or probable paternity;

(2) the biological father had knowledge of his paternity or probable paternity;

(3) the order of retroactive child support will impose an undue financial hardship on the obligor or the obligor's family; and

(4) the obligor has provided actual support or other necessaries before the filing of the action.

TEX. FAM.CODE ANN. § 154.131(b) (Vernon 1996). In the present case, the trial court made the following findings of fact regarding the issue of retroactive child support:

a. The Court finds that [Terry] has known of the [child's] existence and knew he was the child's father since the birth of the child.

b. The Court finds that the order of retroactive support will not impose undue financial hardship on [Terry] based on the testimony of [him] that he does not have other family or dependents and he currently owns U.S. [sic] Treasury Bills in the approximate [value] of $95,000.00[.]

c. The Court finds that [Terry has] provided support and necessaries for [M.W.T.] in the amount of $46,322.00.

. . . .

f. The Court finds that, using the child support guidelines as a measure of appropriate support, and based on the [Terry's] testimony that [he] felt that [ ] twenty percent (20%) of his income was a fair amount of child support . . . [,] retroactive child support should be in the amount of $42,608.00 in addition to the $46,332.00 already paid by [Terry].

The trial court's result was based on the factors required by Section 154.131. Twenty percent of Terry's gross net monthly resources from 1979–1997 is $97,751.90. The trial court's award of $42,608 in addition to the $46,332 totals $88,940. This award is $8,811.90 *less* than that to which Spence is entitled under a rigid application of the guidelines.

■ As in *J.H.*, the trial court in the present case heard evidence of Terry's income and assets, the extent of support he provided since M.W.T.'s birth, and the time that M.W.T. resided with his maternal grandmother. *See* TEX. FAM.CODE. ANN. § 160.005(c) (Vernon 1996) (requiring the trial court to utilize the child support guidelines under Chapter 154 "together with any relevant factors"); *see also id.* § 154.123(b)(1) (listing the furnishing of housing by another as a relevant factor).

**c. Estoppel and Laches**

(1) ESTOPPEL

■ Terry argues that Spence should be estopped from asserting a claim to retroactive child support. Five elements are necessary in order to assert the defense of estoppel successfully:

1) a false representation or concealment of material facts; 2) made with knowledge, actual or constructive, of those facts; 3) to a party without knowledge, or the means of knowledge, of those facts; 4) with the intention that it should be acted on; and 5) the party to whom it was made must have relied or acted on it to his prejudice.

*In re Moragas,* 972 S.W.2d 86, 89–90 (Tex. App.-Texarkana 1998, no pet.).

Terry cites *Smith v. National Resort Communities* for the proposition that Spence's acquiescence to his lower payments throughout M.W.T.'s minority amounts to a false representation, which Terry argues satisfies the first element. Yet, the *Smith* court wrote that "where there is a *duty* to speak, silence may be as misleading as a positive misrepresentation of existing facts." *Smith v. National Resort Communities, Inc.,* 585 S.W.2d 655, 658 (Tex.1979) (emphasis added). Terry does not argue that Spence had a duty at a particular time to inform him of the amount he should have paid.

Terry's reliance on *Moragas* and *Kawazoe v. Davila* is misplaced. In *Moragas,* the mother knew of a child support order, but did not communicate its existence to the father for thirteen years. *See Moragas,* 972 S.W.2d at 91. Here, there was no child support order, and Spence did not take steps to mislead Terry as to his duty to provide for M.W.T. In *Kawazoe,* the court held that the mother was estopped from collecting child support arrearages because she had led him to believe that his parental rights *were terminated. See Kawazoe v. Davila,* 849 S.W.2d 906, 909 (Tex. App.-San Antonio 1993, no pet.). Here, evidence does not exist that Spence affirmatively misled Terry.[1] Rather, Spence testified that she had communicated her son's needs to him in the past.

As to the fifth element necessary to assert estoppel, Terry has failed to show that he relied upon Spence's silence to his detriment. The *Moragas* court explained that the "parent of a child has the *duty to*

---

1. Terry argues that their written agreement in 1995, in which she indicated that $3200 in support for that year, reveals a misrepresentation on her part.

support the child and is liable to a person who provides necessaries to the child.... [The] natural father has the legal duty to support his minor children *whether ordered to do so by the court or not.*" *Id.* (citations omitted). Terry knew of M.W.T.'s birth. Under the Family Code, he is legally bound to the person who provided support to M.W.T. *See* TEX. FAM. CODE ANN. § 151.003 (Vernon 1996). He testified that he had approximately $97,000 in treasury bills. In his brief, Terry argues that "if he had been advised by [Spence] that the amount of the support was not sufficient, he would have paid more.... [I]f he had ever been advised by [her] that she was unhappy with the amount of child support, he would have sought out and consulted an attorney in order to protect his rights." He insists that his reliance on the previous agreements regarding his child support payments "was obviously to his detriment because he now faces the prospect of having to pay over $40,000 in retroactive child support." He does not call attention to any evidence of detrimental reliance on the amount of support that Spence asked him to pay in the past.

At a minimum, Terry failed to establish the first and fifth elements necessary to assert the defense of estoppel. The trial court was correct in not applying the defense of estoppel.

(2) LACHES

 Terry claims that Spence's claims are barred by the doctrine of laches. "Laches is a defense grounded upon an unreasonable delay by one having legal or equitable rights in asserting them, and a good faith change of position by another to his detriment because of the delay." *Moragas,* 972 S.W.2d at 92. We are unable to find evidence of Terry's change in position or any indication of extraordinary circumstances that support the defense of laches. *See id.* In addition, courts have viewed the defense of laches as not being "available in a suit for the enforcement of

a statutory legal right...." *Moragas,* 972 S.W.2d at 92 (citing *Ex parte Payne,* 598 S.W.2d 312, 318 (Tex.Civ.App.-Texarkana 1980, no writ)). Here, Spence seeks relief under Chapter 160 of the Texas Family Code. The defense of laches is unavailable to Terry.

### d. Summary

Although the lump sum ordered by the trial court appears to be harsh, it is the correct result under the law. The trial court analyzed the facts and applied the applicable law correctly. The trial court's decree of paternity as to retroactive child support is not an abuse of its discretion.

### 3. Current Child Support for a Disabled Adult

In his third issue, Terry argues that the trial court erred in determining that M.W.T. is disabled. He asserts that there is "no evidence, or in the alternative insufficient evidence, to support the trial court's decision to extend child support beyond his son's eighteenth birthday." He argues that the trial court erred in determining the amount of support to be paid for the benefit of M.W.T.

### a. Evidentiary Sufficiency of Decision to Extend Child Support

The Texas Family Code provides that:

(a) The court may order either or both parents to provide for the support of a child for an indefinite period and may determine the rights and duties of the parents if the court finds that:

(1) the child, whether institutionalized or not, requires substantial care and personal supervision because of a mental or physical disability and will not be capable of self-support; and

(2) the disability exists, or the cause of the disability is known to exist, on or before the 18th birthday of the child.

Tex. Fam.Code Ann. § 154.302(a) (Vernon Supp.2000). The parties do not dispute the condition alleged to be a disability existed before M.W.T.'s eighteenth birthday.

**(1) STANDARD OF REVIEW**

Appellate courts review fact findings in a bench trial for legal and factual sufficiency of the evidence by the same standards used in reviewing the evidence supporting a jury's verdict. *See O'Farrill Avila v. Gonzalez,* 974 S.W.2d 237, 243 (Tex.App.-San Antonio 1998, pet. denied); W. Wendell Hall, *Standards of Review in Texas,* 29 ST. MARY's L.J. 351, 495–96 (1998).

In deciding a no-evidence point, we consider all the evidence in the light most favorable to the prevailing party, indulging every reasonable inference in that party's favor. *See Associated Indem. Corp. v. CAT Contracting, Inc.,* 964 S.W.2d 276, 285–86 (Tex.1998). We will uphold the finding if more than a scintilla of evidence supports it. *See Burroughs Wellcome Co. v. Crye,* 907 S.W.2d 497, 499 (Tex.1995). The evidence supporting a finding amounts to more than a scintilla if reasonable minds could arrive at the finding given the facts in the case. *See id.*

The trial court's findings of fact are reviewable for factual sufficiency of the evidence by the same standards as would apply in reviewing the factual sufficiency of the evidence supporting jury findings. *See Anderson v. City of Seven Points,* 806 S.W.2d 791, 794 (Tex.1991). When reviewing a jury verdict to determine the factual sufficiency of the evidence, we consider and weigh all the evidence, setting aside the judgment only if the evidence standing alone is so weak as to be clearly wrong and manifestly unjust. *See Cain v. Bain,* 709 S.W.2d 175, 176 (Tex.1986).

**(2) EVIDENCE REGARDING DISABILITY, NEED FOR CARE, AND INABILITY TO BE SELF-SUPPORTING**

Dr. Erwin provided testimony regarding the nature and severity of M.W.T.'s disability. Although similar symptoms of anger might be seen in a "typical" teenage male, Dr. Erwin explained that the question is one of severity. People like M.W.T. "get angry and sometimes walk off a job and they don't keep a job...." Dr. Erwin explained that M.W.T. is particularly susceptible to gangs and other illegal activities, including the use of controlled substances. Dr. Erwin regarded M.W.T.'s chances of survival, "if he had nobody to take care of him" as "chancy at best." On cross-examination of Dr. Erwin, Terry elucidated testimony that might depict M.W.T. as adjusted, with behavior that is typical of a young male adult. Yet, Spence later testified that M.W.T.'s demeanor does not allow him to work the requisite number of hours (at minimum wage) in order to be self-supporting. Although Terry testified that when M.W.T. was living with him in Virginia, he appeared to be well-adjusted, Terry had also suggested that Spence apply for Supplemental Security Income ("SSI"). According to Spence, Terry had felt that M.W.T. was mentally retarded "and you need to get that child on SSI so he'll have some care for him after he turns 18."

The evidence in support of M.W.T.'s disability and inability to support himself is greater than that of a scintilla. Reasonable minds could conclude that he is a disabled adult. In addition, the evidence does not "standing alone" appear to be "so weak as to be clearly wrong and manifestly unjust." Although another expert might disagree as to the *severity* of M.W.T.'s disability, we did not locate evidence that would *clearly* support a finding other than that reached by the trial court.

**(3) SUMMARY**

The evidence is factually and legally sufficient to support the trial court's determination that M.W.T. is disabled, needs substantial care and supervision, and is incapable of supporting himself.

### b. Determination of Current Child Support

Terry argues that the trial court "completely disregarded the requirements" of Section 154.306. The Texas Family Code addresses the requirements for a trial court's decision regarding the amount of support to be paid after a child attains majority:

In determining the amount of support to be paid after a child's 18th birthday, the specific terms and conditions of that support, and the rights and duties of both parents with respect to the support of the child, the court shall determine and give special consideration to:

(1) any existing or future needs of the adult child directly related to the adult child's mental or physical disability and the substantial care and personal supervision directly required by or related to that disability;

(2) whether the parent pays for or will pay for the care or supervision of the adult child or provides or will provide substantial care or personal supervision of the adult child;

(3) the financial resources available to both parents for the support, care, and supervision of the adult child; and

(4) any other financial resources or other resources or programs available for the support, care, and supervision of the adult child.

Tex. Fam.Code Ann. § 154.306 (Vernon 1996).

#### (1) Preservation of Error

■■■ Terry did not request additional findings of fact and conclusions of law. Because he did not complain at trial that the court failed to make these determinations, he did not preserve this alleged error for our review. *See James Holmes Enters., Inc. v. John Bankston Constr. & Equip. Rental, Inc.,* 664 S.W.2d 832, 834 (Tex.App.-Beaumont 1983, writ ref'd n.r.e)

(stating that "it is incumbent upon appellants to request any desired additional findings, and any omitted unrequested findings will be presumed in support of the judgment").

#### (2) Standard of Review

Assuming, without deciding, that the issue is preserved for our review, we examine the trial court's determination of child support for an abuse of discretion. A trial court abuses its discretion as to factual matters only when it acts unreasonably or arbitrarily. *See Walker v. Packer,* 827 S.W.2d 833, 840 (Tex.1992). A trial court abuses its discretion as to legal matters when it fails to analyze or apply the law correctly. *See id.*

#### (3) Consideration of Section 154.306 Guidelines

■■■ Terry asserts that "the trial court did not make any of [the findings regarding the Section 154.306 guidelines] because there was no evidence presented to support a finding on . . . these issues."

Contrary to Terry's assertion, the record contains evidence concerning each of the four criteria listed in the statute. Regarding the first element, Dr. Erwin testified, and was cross-examined at length, regarding M.W.T.'s abilities. Although M.W.T. is able to work, he has a limited capacity to function in the same environment for an extended duration. Spence testified, for example, that he was working only limited hours at Little Caesar's because he was prone to being "written up" frequently. Dr. Erwin explained that M.W.T. needed the direct supervision and care of someone who could assist in resolving M.W.T.'s issues stemming from the Oppositional Defiant Disorder. "So unless someone is looking out for them, unless someone is helping them, they just begin to drift on the streets." Regarding the second issue, Spence testified about various care and vocational options for M.W.T., as well as her willingness to place

him in a program. Dr. Erwin testified he charges $90/hour for his counseling sessions with M.W.T. As to the third issue, Spence provided testimony regarding her limited resources available for M.W.T.'s care and gave examples of the expenditures that she made on his behalf. Terry provided testimony regarding his assets as well. In addition to Spence's testimony, the court could have considered Dr. Erwin's testimony regarding the fourth issue. He discussed the various options available for M.W.T., as well as their potential efficacy.

### (4) SUMMARY

Because the record contains information concerning all of the Section 154.306 criteria, the trial court did not abuse its discretion in assessing current child support against Terry.

### CONCLUSION

We affirm the trial court's decree of paternity.

SARAH B. DUNCAN, Justice, concurring in the judgment only.