

## MEMORANDUM OPINION

No. 04-09-00277-CV

**IN THE INTEREST OF A.A.F.G.**, H.C.Q., and A.G.Q., Children,[1]

From the 131st Judicial District Court, Bexar County, Texas
Trial Court No. 2008-PA-00890
Honorable John D. Gabriel, Judge Presiding[2]

Opinion by:    Marialyn Barnard, Justice

Sitting:    Phylis J. Speedlin, Justice
Rebecca Simmons, Justice
Marialyn Barnard, Justice

Delivered and Filed: December 23, 2009

AFFIRMED

This is an accelerated appeal from the trial court's order terminating Adam Q.'s parental

rights to his children, H.C.Q. and A.G.Q.[3]  We affirm.

---

[1] Though A.A.F.G. is included in the style of this appeal, appellant Adam Q. is not the father of A.A.F.G., and the court's judgment of termination as to A.A.F.G. forms no part of this appeal.

[2] The "Order of Termination Nunc Pro Tunc" was signed by the Honorable Charles Montemayor, Associate Judge.  The Honorable Richard Garcia, Associate Judge, presided over the motion for new trial, and orally denied the motion for new trial and found appellant Adam Q.'s appellate points frivolous.

[3] The trial court also terminated the parental rights of Sonia Freire, the mother of H.C.Q. and A.G.Q.  Freire did not file a motion for new trial or statement of appellate points, and has in no way contested the termination of her parental rights.

PROCEDURAL BACKGROUND

Following a bench trial, the trial court terminated the parent-child relationship between Adam

Q. ("Adam") and his children, finding the evidence supported two of the statutory grounds for

termination alleged by the Texas Department of Family and Protective Services ("the Department"),

and that termination was in the children's best interest. *See* TEX. FAM. CODE ANN. § 161.001(1), (2)

(Vernon 2008). Specifically, the trial court found Adam:

> (1) engaged in conduct or knowingly placed the children with a person who engaged
> in conduct that endangered the physical or emotional well-being of the children; and

> (2) failed to comply with the provisions of a court order that specifically established
> the actions necessary for him to obtain the return of the children, who have been in
> the permanent or temporary managing conservatorship of the Department of Family
> and Protective Services for not less than nine months as a result of the children's
> removal from the parent under Chapter 262 for the abuse or neglect of the children.

*See id.* § 161.001(1)(E), (O).

Adam timely filed an affidavit of indigence, a motion for new trial, and a statement of

appellate points. *See id.* § 263.405(b), (e). The trial court found Adam indigent, denied the motion

for new trial, and found the statement of appellate points frivolous. *See id.* § 263.405(d). Adam

appealed, and we ordered him to brief the issue of whether his grounds for appeal are frivolous. *See*

*id.* § 263.405(g). Although Adams's statement of appellate points listed several issues for appeal,

in his brief he addresses only whether the evidence is legally and factually sufficient to support the

trial court's findings that (1) he failed to comply with the provisions of a court order that specifically

established the actions necessary for him to obtain the return of the children; (2) he engaged in

conduct or knowingly placed the children with a person who engaged in conduct that endangered the

physical or emotional well-being of the children; and (3) termination was in the children's best interest.

## STANDARD OF REVIEW

Parental rights can be terminated only upon proof by clear and convincing evidence that (1) the parent has committed an act prohibited by section 161.001(1) of the Texas Family Code, and (2) termination is in the best interest of the children. *In re J.O.A.*, 283 S.W.3d 336, 344 (Tex. 2009); TEX. FAM. CODE ANN. § 161.001(1), (2). Clear and convincing evidence is "proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established. *J.O.A.*, 283 S.W.3d at 344 (quoting TEX. FAM. CODE ANN. § 101.007; *In re J.F.C.*, 96 S.W.3d 256, 264 (Tex. 2002)). When appeal is sought from an order terminating the parent-child relationship pursuant to chapter 263, subchapter E of the Texas Family Code, the trial court is required to determine whether "the appeal is frivolous as provided by Section 13.003(b), Civil Practice and Remedies Code." TEX. FAM. CODE ANN. § 263.405(d)(3); *see In re M.N.V.*, 216 S.W.3d 833, 834 (Tex. App.—San Antonio 2006, no pet.). An appeal is frivolous when it has no arguable basis in either law or fact. *M.N.V.*, 216 S.W.3d at 834 (citing *De La Vega v. Taco Cabana, Inc.*, 974 S.W.2d 152, 154 (Tex. App.—San Antonio 1998, no pet.)). Section 13.003(b) provides that in determining whether an appeal is frivolous, the trial court "may consider whether the appellant has presented a substantial question for appellate review." TEX. CIV. PRAC. & REM. CODE ANN. § 13.003(b) (Vernon 2002); *see M.N.V.*, 216 S.W.3d at 834-35.

We review the trial court's determination that an appeal is frivolous under an abuse of discretion standard. *M.N.V.*, 216 S.W.3d at 834 (citing *In re W.B.W.*, 2 S.W.3d 421, 422 (Tex. App.—San Antonio 1999, no pet.); *In re M.R.J.M.*, 193 S.W.3d 670, 673 (Tex. App.—Fort Worth

2006, no pet.)). "A trial court abuses its discretion if it acts without reference to guiding rules or principles (legal issues), or acts arbitrarily or unreasonably (factual issues)." *Gardner v. Gardner*, 229 S.W.3d 747, 751 (Tex. App.—San Antonio 2007, no pet.); *In re M.W.T.*, 12 S.W.3d 598, 602 (Tex. App.—San Antonio 2000, pet. denied). When the proper standard of review is abuse of discretion, challenges to the legal and factual sufficiency of the evidence are not independent grounds of error but are merely factors in determining whether the trial court abused its discretion. *Gardner*, 229 S.W.3d at 751; *London v. London*, 192 S.W.3d 6, 14 (Tex. App.–Houston [14th Dist.] 2005, pet. denied). Accordingly, the appellate court must engage in a two-prong analysis and determine (1) whether the trial court had sufficient information upon which to exercise its discretion, and (2) whether the trial court erred in its application of discretion. *Gardner*, 229 S.W.3d at 751; *Sotelo v. Gonzales*, 170 S.W.3d 783, 787 (Tex. App.–El Paso 2005, no pet.).

In undertaking this analysis, the appellate court uses the traditional standards of review for legal and factual sufficiency. *Gardner*, 229 S.W.3d at 751. As stated by the supreme court, when the legal sufficiency of the evidence is challenged in a case where the burden of proof is by clear and convincing evidence, the reviewing court is required to look at all of the evidence in the light most favorable to the finding in question to determine "whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true." *J.F.C.*, 96 S.W.3d at 266. After conducting this review, if the court determines no reasonable fact finder could have formed such a belief, it must conclude the evidence is legally insufficient. *Id.* When the factual sufficiency of the evidence is challenged in a clear and convincing case, the reviewing court must look at all of the evidence and, "[i]f, in the light of the entire record, the disputed evidence that a reasonable

factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient." *Id.*

We must therefore determine, considering the standards of review for legal and factual sufficiency in the context of clear and convincing evidence, whether the trial court abused its discretion in finding Adam's appeal of the best interest finding and at least one of the findings under section 161.001(1) frivolous. *See In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003) (holding only one predicate finding under section 161.001(1) is necessary for termination); *In re D.M.*, 58 S.W.3d 801, 813 (Tex. App.—Fort Worth 2001, no pet.) (same) (citing *In re S.F.*, 32 S.W.3d 318, 320 (Tex. App.—San Antonio 2000, no pet.)).

## ANALYSIS

### *Section 161.001(1)(O) of the Texas Family Code*

The trial court found Adam failed to comply with the provisions of a court order that established the actions he needed to take to obtain the return of his children. *See* TEX. FAM. CODE ANN. § 161.001(1)(O). Pursuant to temporary orders entered May 16, 2008, Adam was ordered "to comply with each requirement set out in the Department's . . . service plan." The family service plan was sent to Adam while he was incarcerated. He signed his family service plan on July 30, 2008, when he was released.

Section 161.001(1)(O) simply provides that a parent's rights may be terminated if a parent fails to comply with a court order; it does not quantify any particular number of provisions of a service plan that a parent must fail to warrant termination, nor does it quantify the degree of conduct that is deemed a failure as to a particular provision. *In re J.S.*, 291 S.W.3d 60, 67 (Tex. App.—Eastland 2009, no pet.). It also does not include a procedure for evaluation of a parent's

partial achievement of plan requirements. *Id.* "Lastly, Section 161.001(1)(O) does not 'make a provision for excuses' for the parent's failure to comply with the family service plan." *Id.* (quoting *In re T.N.F.*, 205 S.W.3d 625, 631 (Tex. App.—Waco 2006, pet. denied)).

According to the testimony, the family service plan required Adam to (1) provide monthly child support for the children, (2) secure suitable housing for the children, (3) complete parenting classes, (4) submit to and pass drug tests, (5) complete counseling, and (6) complete drug treatment.[4] Although there is some undisputed evidence that Adam partially complied with portions of the court-ordered service plan, there is evidence in the record that he:

• failed to provide any child support;

• failed to secure suitable housing for the children;

• failed to fully complete the required parenting classes;

• failed to submit to several drug tests;

• affirmatively failed several drug tests;

• failed to complete counseling; and

• failed to complete drug treatment.

Considering all of the evidence in the light most favorable to the trial court's finding, we conclude the trial court could have reasonably formed a firm belief or conviction that Adam failed to comply with the provisions of a court order that established the actions necessary for Adam to obtain the return of his children. *See J.F.C.*, 96 S.W.3d at 266. Accordingly, the evidence is legally sufficient.

---

[4] The family service plan was not admitted into evidence, nor does it appear in the clerk's record. However, there was evidence presented by the Department delineating several requirements set forth in the plan.

When we consider the evidence in a neutral light, we are still presented with uncontroverted evidence that Adam failed to comply with provisions of the trial court's order. Although it is true that Adam completed all but one parenting class, passed his most recent drug test, and was attending drug treatment and counseling, he still failed to comply fully with all of the provisions of the trial court's order. Given this, we cannot say the trial court could not have reasonably formed a firm belief or conviction that Adam had violated the statutory ground for termination set forth in section 161.001(1)(O). *See id.*

Accordingly, because there was legally and factually sufficient evidence to support the trial court's finding that Adam failed to comply with a court order that established the action necessary for him to obtain the return of the children, the trial court did not abuse its discretion in finding Adam's appeal regarding this ground for termination frivolous. *See M.N.V.*, 216 S.W.3d at 834-35.

Because "[o]nly one predicate finding under section 161.001(1) is necessary to support a judgment of termination," we need not address Adam's remaining issue on appeal pertaining to the trial court's finding under section 161.001(1)(E) of the Family Code. *A.V.*, 113 S.W.3d at 362; *see D.M.*, 58 S.W.3d at 813 (citing *S.F.*, 32 S.W.3d at 320).

### *Best Interests*

A trial court has a great deal of discretion in determining the best interests of a child. *Villasenor v. Villasenor*, 911 S.W.2d 411, 419 (Tex. App.—San Antonio 1995, no writ). "There are several factors that should be taken into account when determining whether termination is in the best interest of the child." *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006) (per curiam). These include factors set forth in section 263.307 of the Family Code that are relevant in the particular case, and the non-exhaustive list of factors described by the supreme court in *Holley v. Adams*. *Id.* (citing Tex.

FAM. CODE ANN. § 263.307; *Holley v. Adams*, 544 S.W.2d 367, 372 (Tex. 1976)); *In re C.R.*, 263

S.W.3d 368, 375 (Tex. App.—Dallas 2008, no pet.). Section 263.307(b) lists thirteen factors to be

considered by the court:

> (1) a child's age and physical and mental vulnerabilities;
> (2) the frequency and nature of out-of-home placements;
> (3) the magnitude, frequency, and circumstances of the harm to the child;
> (4) whether the child has been the victim of repeated harm after an initial report and intervention;
> (5) whether the child is afraid to return home;
> (6) the results of psychiatric, psychological, or developmental evaluations of the child, the child's parents, other family members, or others who have access to the child's home; testing or evaluations of the child and parents,
> (7) whether there is a history of abusive or assaultive conduct by the child's family or others who have access to the child's home;
> (8) whether there is a history of substance abuse by the child's family or others who have access to the child's home;
> (9) whether the perpetrator of the harm had been identified;
> (10) the willingness of the child's family to seek out, accept, and complete counseling and cooperate with supervising agencies;
> (11) the willingness and ability of the child's family to effect positive environmental and personal changes within a reasonable time;
> (12) whether the child's family demonstrates adequate parenting skills, including providing the child with adequate health and nutritional care, care and nurturance consistent with the children's development, guidance and supervision for the child's safety, a safe physical home environment, protection for exposure to violence even if not directed at the child, and an understanding of the child's needs and capabilities; and
> (13) whether an adequate social support system consisting of an extended family and friends is available to the child.

TEX. FAM. CODE ANN. § 263.307(b). In *Holley*, the supreme court included nine factors that could

considered in a best interest determination:

> (1) the child's desires;
> (2) the emotional and physical needs of the child, now and in the future;
> (3) the emotional and physical danger to the child now and in the future;
> (4) the parental abilities of those seeking custody;
> (5) the programs available to assist individuals seeking custody to promote the child's best interest;

(6) the plans for the child by the individuals or agency seeking custody;
(7) the stability of the home or proposed placement;
(8) the acts or omissions of the parents, which may indicate the existing parent-child relationship is not a proper one; and
(9) any excuse for the parent's acts or omissions.

544 S.W.2d at 371-72.  Though nine factors are listed, no single factor controls, and the trier of fact need not consider all of them.  *Id.* at 372.  "The absence of evidence about some of these considerations would not preclude a factfinder from reasonably forming a strong conviction or belief that termination is in the child's best interest."  *C.H.*, 89 S.W.3d at 27.  And, undisputed evidence of just one factor may be sufficient in a particular case to support a finding that termination is in the child's best interest.  *Id.*  Although the focus of the *Holley* factors is on the best interest of the *child* and not the best interest of the parent, courts should nevertheless indulge the strong presumption that the child's best interests will be served by preserving the parent-child relationship.  *See R.R.*, 209 S.W.3d at 116.

The children in this case are ages five and two.  The oldest is H.C.Q., a girl.  Carol Strange, a social worker and therapist for H.C.Q., testified that H.C.Q. is "very happy" in her current foster home and wants to stay there.  H.C.Q. told Terisa Barrios, the Department case worker, that she wants to be adopted.  A.G.Q., a boy, is only two and unable to express any desire as to his living arrangements.  Nina Woolard, the CASA volunteer, testified that at the visitation she observed, the children were "pretty much indifferent" to Adam.  Although they acknowledged Adam and he talked to them, they "pretty well[] did their own thing."

The evidence shows that although Adam signed his family service plan in July of 2008, he did not even begin working on the court-ordered services until the end of January in 2009.  Adam claimed he attempted to call the Department and his attorney, but he did not receive return calls, he

"just fell off." As noted above, he failed to complete many of the tasks on the service plan, including finding suitable housing for the children. Adam admits that he has no family support and would not have anyone to assist him in the care of the children. He currently works thirty to thirty-five hours a week at a fast-food restaurant on the night shift, but believes he could move to the day shift and obtain child-care. Terisa Barrios testified that although Adam is bonded with the children and does well with them during visits, he is not capable of caring or providing for them.

There was testimony about Adam's drug use, including the fact that he failed several drug tests and failed to show for three others. He admitted to testing positive for "benzos, coke, and weed." Though enrolled in drug treatment, Adam admitted telling others he did not have a drug problem, and even testified that he did not think he had a drug problem, claiming he simply needed more counseling, support, and help. At hearings in February and March of 2009, Adam told the CASA volunteer that he considered drug treatment a waste of time and denied having a drug problem. His therapist, Tricia Boone, testified that because Adam has not dealt with his drug issues, she could not recommend reunification given the high incidence of relapse during the first year of drug treatment.

There was also testimony about domestic violence and anger management. H.C.Q. told her therapist that Adam hit her and her mother, and in fact was in jail because of this. H.C.Q. claimed Adam hit her with a shoe and was unable to control his anger. The therapist testified that H.C.Q. is angry that Adam hit her and her mother, and that Adam's stepdaughter had relayed stories of domestic violence, including Adam throwing keys at their mother and putting a pillow over the mother's face. Despite Adam's claims of progress in the area of anger management, the evidence showed that Adam has serious issues in this regard. Although he completed anger management

classes during his incarceration, his therapist, Tricia Boone, testified she cannot recommend reunification, in part, because of her concerns about Adam's anger issues. Boone does not believe Adam is in control of his anger and needs to return to anger management classes. She also testified that he has not dealt with his history of domestic violence, and in fact admitted to her that recently he became angry over the situation with his children and the Department and punched his fist through two walls. Adam confirmed the wall-punching incident during his testimony.

Adam's anger has had a great effect on H.C.Q. She has a history of aggression, though she has made tremendous progress in therapy. According to her therapist, H.C.Q. exhibits signs of exposure to domestic violence, and would show an escalation in her aggression after visits with Adam.

The evidence showed that Adam's children and his stepdaughter are now in a foster home that wants to adopt all three children. The CASA volunteer visited the children at the foster home on four occasions and described it as a "wonderful, caring family." She stated the children are happy, well-cared for, and H.C.Q. is doing very well in school. Since being placed with the foster family, the children have shown "drastic improvement." The current case worker, H.C.Q.'s therapist, and the CASA volunteer all testified that it would not be in the children's best interests to be returned to Adam; rather, it would be in their best interests if Adam's parental rights were terminated and the children were adopted by their current foster family.

Adam testified on his own behalf. On direct examination, he admitted to problems with drug abuse and anger management, but on cross-examination he conceded he told people he did not have a problem with drugs, and in fact, then claimed he had no drug problem. He also said he did not believe he had anger issues, and testified the wall-punching incident occurred because his family

issues are "very overwhelming" and he just "released a bit of tension." Adam claims therapy is helping him, and he is willing to do anything to get his kids back.

When we consider all of the evidence in the light most favorable to the trial court's best interest finding, we must conclude the trial court could have reasonably formed a firm belief or conviction that terminating Adam's parental rights was in the children's best interests. *See J.F.C.*, 96 S.W.3d at 266. And, even considering this same evidence in a neutral light, we cannot say that the trial court could not have reasonably formed a firm belief or conviction that termination was in the best interest of the children. *See id.*

Given that the evidence is legally and factually sufficient to support the trial court's best interest finding, we hold the trial court did not abuse its discretion in finding Adam's appeal regarding this issue frivolous. *See M.N.V.*, 216 S.W.3d at 834-35.

## CONCLUSION

Because the trial court did not err in finding Adam's appeal frivolous, we affirm the trial court's order.

Marialyn Barnard, Justice