# IN THE SUPREME COURT OF TEXAS

════════════
No. 11-0796
════════════

THE OFFICE OF THE ATTORNEY GENERAL OF TEXAS, PETITIONER,

v.

RICHARD LYNN SCHOLER, RESPONDENT

═══════════════════════════════════════════════════════════
ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE SECOND DISTRICT OF TEXAS
═══════════════════════════════════════════════════════════

**Argued December 6, 2012**

CHIEF JUSTICE JEFFERSON delivered the opinion of the Court.

When a marriage ends in divorce, and there are children involved, a court frequently orders one parent to pay monthly child support. That was the case here. Years later, the parents agreed that the father's support obligation would cease if he voluntarily relinquished his parental rights. Although the father signed the necessary paperwork, the mother's attorney never filed it in court. The father argues that he relied on the attorney's promises that he would promptly initiate court proceedings to finalize the termination, and that the mother (and, consequently, the Office of the Attorney General) should be estopped from enforcing the support obligation now.

But court-ordered child support reflects a parent's duty to his child, not a debt to his former spouse. Except as provided by statute, the other parent's conduct cannot eliminate that duty.

Because estoppel is not a defense to a child support enforcement proceeding, we reverse the court of appeals' judgment and reinstate the trial court's judgment.

## I.     Background

In 1993, Richard Scholer and his wife, Denise Wilbourn, had a son, C.E.S., in Solano County, California.  Scholer and Wilbourn ended their marriage the following year.  The divorce decree awarded Wilbourn sole physical custody of C.E.S., gave Scholer visitation rights, and ordered Scholer to pay $450 in monthly child support.

Scholer maintains that he paid this amount directly to Wilbourn until November 1994, when he and Wilbourn verbally agreed to reduce the payments to $300.  Soon thereafter, Wilbourn and C.E.S. moved to Texas.  Scholer continued to send support payments to Wilbourn through December 1999.  Eventually, Scholer also moved to Texas.

In July 2000, Scholer complained to Wilbourn that she had repeatedly blocked his attempts to maintain a relationship with his son.  Scholer told Wilbourn that he wished to remain a part of C.E.S.'s life and intended to sue for shared custody.  Alternatively, he offered to sever his relationship with C.E.S. if Wilbourn would agree that his obligation to pay child support would cease.

Several weeks later, attorney Michael B. Curtis wrote to Scholer on Wilbourn's behalf.  The letter summarized Wilbourn's fear that C.E.S. would be harmed by continued contact with Scholer. Curtis inquired whether Scholer would be inclined to terminate his parental rights which would "also terminate any support obligation [he] may have in the future."  Curtis enclosed a proposed affidavit to that effect.

2

Scholer signed a revised affidavit in September 2000, relinquishing his parental rights. It stipulated that Scholer declined to testify in any lawsuit related to the termination of his rights, and that he did not want to be notified of any related court proceedings. Scholer returned the signed affidavit to Curtis.

The affidavit was never filed in court. Wilbourn testified that she did not know that Scholer sent the affidavit to Curtis, as she broke ties with her attorney around the same time. Believing that his parental rights had been terminated, Scholer stopped paying child support. He did not attempt to contact Wilbourn or Curtis or the court to check the status of the termination. Wilbourn did not take any steps to collect child support from Scholer.

Nine years later, Scholer received a notice from the Office of the Attorney General of Texas informing him that he had failed to comply with the original California child support order and owed $81,450 in arrearages.[1] The OAG sought a court order to modify future child support payments and confirm support arrearages. Scholer denied that he owed the money, claiming that Wilbourn, and thus the OAG, were estopped from pursuing child support payments because Wilbourn led him to believe that his parental rights had been terminated nine years earlier.

The trial court rejected Scholer's estoppel defense. The court found that Scholer owed $77,875 plus interest. He was ordered to pay $493 per month for the arrears and an additional $522.83 per month to cover current child support, and to provide health insurance for C.E.S.

---

[1] Though Scholer produced proof of some of the payments to Wilbourn, he claims he was unable to obtain copies of all of the checks. Wilbourn agreed to give Scholer credit for the payments that he was able to prove with check copies that bore her signature. The arrears were later reduced accordingly.

The court of appeals reversed, reasoning that because the OAG was enforcing the child support order on the mother's behalf as her assignee, it was subject to all affirmative defenses that could be asserted by one private party against another, including estoppel. 352 S.W.3d 48, 52, 55. It instructed the trial court to conduct a hearing on Scholer's estoppel defense. *Id*. at 55. We granted the OAG's petition for review to address whether estoppel is an affirmative defense to a child support enforcement action. 55 Tex. Sup. Ct. J. 1171 (Aug. 17, 2012).

## II.    The OAG and the collection of child support.

Texas has adopted the Uniform Interstate Family Support Act (UIFSA),[2] which allows Texas courts to enforce support orders issued by other states, like the California order involved here. *See* TEX. FAM. CODE ch. 159. The OAG's role in the collection of child support payments derives from federal legislation. Title IV, Part D, of the Social Security Act requires each state to designate an agency to enforce child support orders. *See* 42 U.S.C. §§ 651–69B (1984). As we recently noted, "[t]he goal[s] of the Title IV-D child support enforcement program [are] to help . . . parents obtain child support for their children . . . [and] to enhance the well-being of children by assuring that assistance in receiving financial support is available through various mechanisms, including enforcement of child support obligations." *In re Office of Attorney Gen.*, __ S.W.3d __, __ n.4 (Tex. 2013).

The OAG is the designated IV-D agency in Texas and has the power to enforce child support orders and collect and distribute  support payments. TEX. FAM. CODE §§ 231.001, .101(a)(5)–(6).

---

[2] Drafted and amended by The National Conference of Commissioners on Uniform State Laws, UIFSA was approved by the American Bar Association in 1993 and went into effect in 1996. Each state was required to adopt the required UIFSA provisions by January 1, 1998. 42 U.S.C. § 666(f).

Among its powers is the ability to seek a court order to withhold income from a child support obligor's disposable earnings. TEX. FAM. CODE §§ 102.007 (authorizing Title IV-D agencies to file suits for modification or motions to enforce child support orders), 158.006 (a court or a Title IV-D agency "shall order that income be withheld from [obligor's] disposable earnings"); *see also id.* §§ 231.001, .002, .101 (describing the powers, services, and duties of a Title IV-D agency, including enforcement, collection, and distribution of child support payments).

Though the OAG has general authority to initiate a suit on a parent's behalf, that authority does not explicitly make the OAG an assignee for purposes of collecting child support directly. Instead, the statute gives the OAG a limited power of assignment in certain cases, like this one.[3] *See* 42 U.S.C. §§ 654, 657; TEX. FAM. CODE § 231.104(a) ("[A]n application for or the receipt of financial assistance . . . constitutes an assignment to the Title IV-D agency of any rights to support from any other person that the applicant or recipient may have personally or for a child for whom the applicant or recipient is claiming assistance."); TEX. FAM. CODE § 231.104(b) ("An application for child support services is an assignment of support rights to enable the Title IV-D agency to establish and enforce child support and medical support obligations . . . .").

---

[3] The OAG acknowledged that it is "unclear" whether the right of assignment would be available to the government but for section 231.104.

**III.     Estoppel cannot be used as an affirmative defense in child support enforcement actions.**

Estoppel, an equitable defense,[4] "arises where by fault of one, another has been induced to change his position for the worse." *Wirtz v. Sovereign Camp, W.O.W.*, 268 S.W. 438, 441 (Tex. 1925).  The doctrine operates "to prevent injustice and protect those who have been misled." *Roberts v. Haltom City*, 543 S.W.2d 75, 80 (Tex. 1976); *Davis v. Allison*, 211 S.W. 980, 984 (Tex. 1919).

Scholer claims that Wilbourn led him to believe that both his parental rights and his obligation to pay child support had been terminated.  Because Wilbourn, through her attorney, encouraged Scholer to relinquish his rights and, for years, made no attempt to inform him that the termination had not been finalized, Scholer now asserts that Wilbourn is to blame for her role in his failure to pay and that estoppel should bar her and the OAG, as assignee, from enforcing the support obligation.  The OAG argues that the Family Code does not authorize an estoppel defense and that a trial court may not apply this equitable doctrine in a child support enforcement action.  To resolve this question, we begin by examining the statute.

In 1995, the Legislature added section 157.008 to the Family Code.  *See* Act of Apr. 20, 1995, 74th Leg., R.S., ch. 20, § 1, 1995 Tex. Gen. Laws 113, 177–78.  Titled "Affirmative Defense to Motion for Enforcement of Child Support," the section provides a single defense to such motions: that the obligee voluntarily relinquished possession and control of the child to the obligor and the

---

[4] *See, e.g.*, *Ditta v. Conte*, 298 S.W.3d 187, 192 n.27 (Tex. 2009); *Mayer v. Ramsey*, 46 Tex. 371, 373–74 (Tex. 1876); *see also Heckler v. Cmty. Health Servs. of Crawford Cnty., Inc.*, 467 U.S. 51, 59 (1984) ("Estoppel is an equitable doctrine invoked to avoid injustice in particular cases.").

6

obligor provided actual support to the child.[5] TEX. FAM. CODE § 157.008(a)–(b). Although an obligor may counterclaim or receive an offset for amounts actually paid, he has no other defenses to the claim. *Id*. § 157.008(d).

Before 1995, some of the provisions in section 157.008 were found in section 14.40 of the Family Code. That section provided that, in cases in which an obligor was held *in contempt* of a child support order, he or she could affirmatively plead that actual support had been provided because the custodial parent had voluntarily relinquished control of the child. *See* Act of Nov. 1, 1987, 70th Leg., 2d C.S., ch. 73, § 8, 1987 Tex. Gen. Laws 225, 230 (amended 1995) (current version at TEX. FAM. CODE § 157.008). The main difference between the two versions is in the statute's application—while the prior version limited the use of the affirmative defense to contempt allegations, the current statute expands the defense to all motions involving the enforcement of child support, including motions to confirm arrears, like the one before us today.

Sections 157.262 and 157.263 were also added to the statute in 1995. Section 157.263 requires that, in child support enforcement actions in which a movant "requests a money judgment for arrearages, the court shall confirm the amount of arrearages and render one cumulative money judgment." TEX. FAM. CODE § 157.263(a) (added by Act of Apr. 20, 1995, 74th Leg., R.S., ch. 20, § 1, 1995 Tex. Gen. Laws 113, 184). This section can be read in conjunction with section 157.262,[6]

_____

[5] An obligor may also plead an affirmative defense to an allegation of contempt or a violation of a community service requirement that he pay child support. In such cases an obligor may plead that he could not provide the amount of support ordered, did not possess property that could be sold to raise the required funds, tried unsuccessfully to borrow the funds, and knew of no other source from which the money could be legally obtained. TEX. FAM. CODE § 157.008(c).

[6] Texas Family Code section 157.262 was repealed in 2011. Act of Apr. 20, 1995, 74th Leg., R.S., ch. 20, § 1, 1995 Tex. Gen. Laws 113, 184, *repealed by* Act of Sept. 1, 2011, 82d Leg., R.S., ch. 508, § 24, 2011 Tex. Gen. Laws 1264, 1269. The portions of the section related to the inability of courts to reduce or modify child support are now

which provided that "[e]xcept as provided by th[e] section, in a contempt proceeding or in rendering a money judgment, the court may not reduce or modify the amount of child support arrearages," but such arrearages "may be subject to a counterclaim or offset as provided by this subchapter." *Id.* § 157.262(a), (f). In section 157.262, the only exception to the provision prohibiting the modification or reduction of arrears was in the event of an abeyance of enforcement of arrears and the successful completion, by the obligor, of the court's terms.[7] *See id*. § 157.262(b)–(e). The only counterclaims and offsets were for monies paid by an obligor for actual support of a child during certain time periods and lump-sum monies received by the obligee from an obligor's disability payments.[8] *See id*. §§ 157.008(d), .009. Before the amendments, sections 157.262 and .263 were included in section 14.41, which placed substantially similar limits on a court's ability to confirm arrearages.[9]

Scholer—and the court of appeals—rely on decisions from our appellate courts that have recognized estoppel defenses in child support enforcement actions in contexts similar to that before

---

codified in section 157.263 (b-1): "the court may not reduce or modify the amount of child support arrearages" but may only adjust said amount according to the counterclaims and offsets allowed by the statute. TEX. FAM. CODE § 157.263(b-1). The amendment applies to child support enforcement motions that were pending in trial court or filed on or after September 1, 2011. *See* Act of Sept. 1, 2011, 82d Leg., R.S., ch. 508, § 29, 2011 Tex. Gen. Laws 1264, 1270. The OAG filed this motion for enforcement in September 2009.

[7] The portions of the section related to abeyance of enforcement ((b)-(e)) were added in 2001, along with the phrase "[e]xcept as provided by this section" in subsection (a). *See* Act of Sept. 1, 2001, 77th Leg., R.S., ch. 392, § 3(a), 2001 Tex. Gen. Laws 719, 720.

[8] Section 157.009 was added in 2009 and provides for a credit for any disability-based lump-sum payments in addition to "any other credit or offset available to an obligor". *See* Act of June 19, 2009, 81st Leg., R.S., ch. 538, § 1, 2009 Tex. Gen. Laws 1242, 1242-43.

[9] Section 14.41 did not include an exception for abeyance of enforcement. *See* Act of Sept. 1, 1985, 69th Leg., R.S., ch. 232, § 9, 1985 Tex. Gen. Laws 1158, 1163, *amended by* Act of Apr. 20, 1995, 74th Leg., R.S., ch. 20, § 1, 1995 Tex. Gen. Laws 113, 184.

us today. For example, in *LaRue v. LaRue*, 832 S.W.2d 387 (Tex. App.—Tyler 1992, no writ), the father mistakenly believed that his parental rights had been terminated. At the mother's request, the father signed an affidavit relinquishing his parental rights and returned it to the mother's lawyer. Though the mother had initiated parental termination and related adoption proceedings in court, she decided not to follow through with the suit but neglected to inform the father. As a result, the father incurred six years of overdue child support payments. The court determined that the father had successfully proved estoppel. The court noted that although "estoppel is rarely asserted with success in child support cases, [that fact] does not foreclose its availability as a legitimate, effective defense in appropriate circumstances." *Id*. at 391.

Similarly, in *Kawazoe v. Davila*, 849 S.W.2d 906, 909 (Tex. App.—San Antonio 1993, no pet.), the court of appeals held that estoppel was available as a defense to a child support enforcement suit. In that case, the mother informed the father that she wished to terminate his parental rights so that her new husband could adopt their child. The father agreed and personally delivered the termination documents to the mother, who subsequently led him to believe that she had filed them in court and resolved the suit. The father was unaware that his rights were still intact until he was summoned to a child support contempt hearing thirteen years later. The court of appeals concluded that the father was entitled to assert estoppel as an affirmative defense. Citing *LaRue*, the court determined that the father was under no "duty to monitor the status of any court proceedings" since the mother and her attorney neglected to notify him of their intention to deviate from the planned termination. *Id*. at 909–10; *see also Hurry v. Hurry*, No. 14-96-00363-CV, 1997 WL 576375, at *3-4 (Tex. App.—Houston [14th Dist.] Sept. 18, 1997, pet. denied) (noting that there are

9

"narrow circumstances" in which estoppel has been successfully argued in child support enforcement cases, namely when written relinquishments of rights were signed and reasonably relied upon).

Indeed, many of our appellate courts have suggested that estoppel or quasi-estoppel may be appropriate defenses in a child support enforcement action[10]—several without finding that estoppel actually applied to the facts at issue.

The OAG argues that the current statute limits the defenses available to an obligor and prohibits a court from making discretionary alterations to arrears. The OAG reasons that because the only cases that are factually similar to this one—*LaRue* and *Kawazoe*—were decided before the legislative changes, those courts could not have contemplated the current statutory limits on affirmative defenses. Further, the statute limits a court's discretion in such cases, effectively requiring the court to act as a "mere scrivener" in confirming the arrearages and rendering

___

[10] *See, e.g.*, *Hall v. Hall*, No. 09-06-206-CV, 2007 WL 2127133, at *3 (Tex. App.—Beaumont July 26, 2007, no pet.) (mem. op.) (holding that non-custodial parent was entitled to estoppel defense after custodial parent obtained a divorce and child support order without the father's knowledge and later promised him that divorce was "fake"); *In re A.L.G.*, 229 S.W.3d 783, 786-87 (Tex. App.—San Antonio 2007, no pet.) (holding that obligor established "the requisite elements to prove his affirmative defense of quasi-estoppel"—which do not include misrepresentation and reliance—after proving that mother voluntarily accepted day-care payments); *In re Marriage of Moon*, No. 07-03-0144-CV, 2004 WL 912429, at *2-3 (Tex. App.—Amarillo Apr. 29, 2004, no pet.) (mem. op.) (finding that although estoppel was available as a defense in other child support suits, non-custodial parent was not entitled to benefit of defense because he ignored circumstances that should have alerted him to fact that parental rights had not been terminated); *In re M.W.T.*, 12 S.W.3d 598, 603–04 (Tex. App.—San Antonio 2000, pet. denied) (finding that without false representations and reliance, non-custodial parent was unable to prove all elements of estoppel); *In re Moragas*, 972 S.W.2d 86, 91 (Tex. App.—Texarkana 1998, no pet.) (determining that non-custodial parent could not assert estoppel defense because he failed to prove he relied on custodial parent's silence about child support order); *Gawlik v. Gawlik*, 707 S.W.2d 256, 259 (Tex. App.—Corpus Christi 1986, no writ) (upholding the trial court's finding that party failed to pay child support, suggesting that estoppel can be a legitimate defense in child support enforcement actions); *Texas Dept. of Human Res. v. Allred*, 621 S.W.2d 661, 664 (Tex. Civ. App.—Waco 1981, writ dism'd) (rejecting the use of the doctrine of estoppel in that particular case, noting that it was "without merit"); *Houtchens v. Matthews*, 557 S.W.2d 581, 585–86 (Tex. Civ. App.—Fort Worth 1977, writ dism'd) (finding that elements of estoppel were not proved, but confirming the appropriateness of the defense in child support suits). *But see In re H.G.L.*, No. 14-08-00087-CV, 2009 WL 3817871, at *6 (Tex. App.—Houston [14th Dist.] Nov. 17, 2009, no pet.) (mem. op.) (holding that estoppel was not a defense in an action to reduce the amount of arrearages).

judgment.[11]  The OAG argues that the cases on which Scholer and the court of appeals rely do not apply here.  For at least two reasons, we agree with the OAG.

First, *Larue*, *Kawazoe*, and many (though not all) of these cases predate the 1995 statutory amendments.  The statute now limits obligors to a single affirmative defense, and a court may not adjust arrearage amounts outside of the statutorily mandated exceptions, offsets, and counterclaims.  Because courts are prohibited from making additional adjustments, affirmative defenses that are not included in the statute, like estoppel, are also prohibited because they would require courts to make discretionary determinations.  *Cf. Chenault v. Banks*, 296 S.W.3d 186, 190 (Tex. App.—Houston [14th Dist] 2009, no pet.) (holding that "in a proceeding to confirm child support arrearages, the trial court's child support calculations must be based on the payment evidence presented, not the trial court's assessment of what is fair or reasonable").  In child support enforcement actions, courts may evaluate evidence only to consider the listed factors and defenses, and nothing more.  *See* TEX. FAM. CODE §§ 157.008, .263(b).

Second, the Legislature's restriction on affirmative defenses after 1995 reflects a rationale existing even before then.  A parent's duty of support, although often characterized monetarily and used with terms like "arrearages," is not a debt owed to the other parent.  For that reason, estoppel would be inappropriate here.  That doctrine protects a party who is harmed by relying on the promises or actions of another.  In such situations, the harmed party, who might otherwise be at fault, is excused from performance or payment of a debt.  But in cases involving child support, the

---

[11] *See Williams v. Patton*, 821 S.W.2d 141, 153 (Tex. 1991) (Phillips, C.J., dissenting) (noting that the statute prohibits a trial court's independent judgment or discretion in determining arrearages, instead envisioning that a judge will "act[] as a mere scrivener").

assertion of the defense would compromise the welfare of a child who is at the mercy of his parents' choices. Each parent owes an obligation to provide child support. Viewed this way, the question is not whether Scholer owes Wilbourn a debt that vanishes because of Wilbourn's actions. It is whether the parents, regardless of their quarrels, iniquities, or mutual agreements, must nevertheless satisfy their duty to the child.

The Family Code characterizes child support as a duty rather than a debt. *See, e.g.*, TEX. FAM. CODE §§ 154.006 (describing circumstances under which "duty" of support may be terminated); .013 (requiring continuation of "duty" of support after death of obligee), .128 (detailing guidelines for calculating "duty" of support for children in multiple households). This concept also has a rich history in our jurisprudence. We have held that "[t]he obligation which the law imposes . . . on parents to support their children is not considered a 'debt' . . . but a legal duty arising out of the status of the parties." *Ex parte Hall*, 854 S.W.2d 656, 658 (Tex. 1993); *see Adair v. Martin*, 595 S.W.2d 513, 515 (Tex. 1980) (rejecting the idea that child support can be characterized as "debt," even if it can be reduced to judgment and enforced); *Cunningham v. Cunningham*, 40 S.W.2d 46, 49 (Tex. 1931) (holding that child support is "a duty, natural and legal" that is not to be treated as a debt).

The child's welfare underlies child support enforcement suits, and providing monetary support is part of a parent's contribution to that welfare. As a result, the parents' actions, either collectively or alone, cannot affect the support duty, except as provided by statute. For example, the Family Code requires parents to obtain court approval, conditioned on the child's best interest, before they can enforceably agree to modify child support. TEX. FAM. CODE § 154.124; *Williams*

12

*v. Patton*, 821 S.W.2d 141, 143 (Tex. 1991) (noting that "the legislature has . . . prohibited self-help by the obligor and obligee in prospectively modifying court-ordered child support without court approval"). Courts may not condition the payment of child support on whether one parent allows the other to have access to the child. TEX. FAM. CODE § 154.011. Underlying such provisions is the recognition that "[i]t is a strong, long-standing policy of this state to protect the interests of its children, and this is the policy [supporting] the enforcement of child support obligations." *Williams*, 821 S.W.2d at 145. Such proceedings reflect "the reality that *the child* is frequently the one who has been harmed by nonpayment and it is *the child's interests* which are ultimately sought to be protected." *Id*. at 145 (emphasis added).

Because payment of child support reflects a parent's duty to his child, furthering the child's welfare and best interests, estoppel is not an affirmative defense to a child support enforcement action. A parent who owes that duty must diligently satisfy it. If he is displeased with access, he may ask the court to modify or enforce the visitation order, or to hold the custodial parent in contempt for violating it. *See* TEX. FAM. CODE §§ 156.001, 157.001(a)–(b). If he is unable to pay, he may seek a modification of the support order. *See id*. § 156.401. If he believes his rights and his support obligations have been terminated, he should ensure a court order reflects that. *See id*. § 161.206; *cf. In re E.R.*, 385 S.W.3d 552, 555 (Tex. 2012) (recognizing that "a parent must remain vigilant with respect to her child's welfare"). But except for the very narrow circumstance recognized by law—the obligee's relinquishment of possession and the obligor's provision of

support[12]—he may not rely on the other parent's actions to extinguish his support duty.  To the extent other cases hold differently, we disapprove of them.

## IV.    Conclusion

We reverse the court of appeals' judgment and reinstate the trial court's judgment.  TEX. R. APP. P. 60.2(c).

_____
Wallace B. Jefferson
Chief Justice


**OPINION DELIVERED:**  June 28, 2013

---

[12] TEX. FAM. CODE § 157.008(a).