

# IN THE
# TENTH COURT OF APPEALS

### No. 10-11-00403-CV

## IN THE INTEREST OF R.K.S. AND T.G.S., CHILDREN

**From the County Court at Law**
**Walker County, Texas**
**Trial Court No. 13202A**

## MEMORANDUM OPINION

In six issues, appellant, the Office of the Attorney General, challenges the trial court's "Judgment for Child Support Arrearage." We reverse and remand.

## I. BACKGROUND

On or about August 14, 1995, the 309th District Court of Harris County, Texas, ordered appellee, Robert Kevin Smith Sr., to pay child support to Tara Marie Burnett in the amount of $493.74 per month beginning on September 1, 1995, for the support of the couple's two children, R.K.S. and T.G.S. On January 28, 2010, appellant filed a "Motion for Enforcement of Child Support Order" in the 309th District Court, alleging that

appellee had a child-support arrearage of $114,747.82. Thereafter, on July 14, 2010, appellee filed a motion to transfer this matter to the Walker County Court at Law, which was granted by the 309th District Court.

Subsequently, appellee filed his first amended answer in the Walker County Court at Law, wherein he denied the allegations in appellant's motion for enforcement and asserted the following:

> 4. Contrary to the allegations of the Motion for Enforcement of Child Support Order, the support obligation was terminated by agreement of the parties reduced to writing in accordance with Texas Family Code Sec. 154.124 and Rule 11 of the Texas Rules of Civil Procedure.

> 5. Respondent [appellee] affirmatively pleads accord and satisfaction.

On April 29, 2011, a hearing was conducted on appellant's motion to enforce. At the hearing, both appellee and Tara testified about, among other things, the parties' agreement. Appellee testified that he had an agreement with Tara to make a $10,000 lump-sum payment and sign a relinquishment of his parental rights so that Tara's husband could adopt the children in exchange for not paying past or future child support. Tara testified that her understanding of the agreement was that she agreed "not to prosecute and put him in jail at that particular point in time, due to the amount of money owed . . . ." Tara recounted that appellee's father agreed to pay her the $10,000 and stated that appellee "had to go have a vasectomy . . . so that he could not

have any more children, because his father was tired of financially supporting the children that Mr. Smith was having."[1]

Attorney Jack Haney testified that he previously represented Tara and her husband. Haney recalled that, on March 13, 2000, appellee signed an affidavit of relinquishment of his parental rights to his children with Tara. Haney acknowledged that appellee's affidavit of relinquishment was valid and properly executed. Thereafter, Haney prepared a petition to terminate and adopt the children and filed those documents with the District Clerk in Harris County. Haney also filed a motion to transfer the termination and adoption case to Walker County, which was granted. However, at some point in time, Tara and her husband "decided not to proceed with the termination and adoption." Haney believed that the termination case was ultimately dismissed for want of prosecution. Apparently, appellee was not notified of the final disposition of the termination case.

Believing that his parental rights to the children had been terminated, appellee made no efforts to maintain a relationship with the children.[2] Despite the agreement between appellee and Tara, appellant communicated to appellee "[a]t various different times" that he had a large delinquency for not paying child support. Appellee noted

---

[1] Appellee admitted that he pays child support for two other children he has fathered.

[2] Appellee stated that he was not represented by counsel for the termination case and that he never received any order actually terminating his parental rights.

that he tried to contact appellant numerous times to explain the parties' agreement; however, he was unsuccessful.

At the April 29, 2011 hearing, appellee, now represented by counsel, was unable to produce the written agreement that he had with Tara.[3] Nevertheless, in her testimony, Tara acknowledged the existence of the agreement, though she steadfastly asserted that the $10,000 lump sum addressed the past amount due that appellant calculated to be approximately $37,500.

At the conclusion of the hearing, the trial court entered a "Judgment for Child Support Arrearage," wherein the trial court concluded that:

> Respondent, Robert Kevin Smith, Sr. and Respondent, Tara Marie Burnett, entered into a written agreement whereby Robert Kevin Smith, Sr. was to pay Tara Marie Burnett $10,000.00 and to relinquish his parental rights to [R.K.S.], and [T.G.S.], in full and complete satisfaction of any child support arrearages and any present and future child support obligation. The Court further finds that, although the written agreement was not produced in court, its existence was proved by the evidence admitted before the Court. The Court further finds that Respondent, Robert Kevin Smith, Sr., did, pursuant to said agreement, deliver to Respondent, Tara Marie Burnett, $10,000.00 and a properly executed and unrevoked voluntary relinquishment of Robert Kevin Smith Sr.'s parent rights with regard to [R.K.S.], and [T.G.S.]. The Court further finds that such agreement was in the nature of an accord and satisfaction, and that such agreement was, and is, in the best interest of the children.
>
> The Court further finds and confirms that Respondent, Robert Kevin Smith, Sr., is in arrears in the amount of $0 for the period September 1, 1995, through April 29, 2011. Judgment should be awarded against

---

[3] Despite appellee's failure to produce the written agreement, appellant acknowledges on appeal that it cannot challenge the trial court's finding of fact 5, which pertained to the existence of the written agreement, because "there is sufficient evidence to support it."

Respondent, Robert Kevin Smith, Sr., and in favor of Respondent, Tara Marie Burnett, in the total amount of $0 for the arrearages and interest.

. . . .

The Court further finds that Robert Kevin Smith, Sr., is not presently obligated to pay child support to Respondent, Tara Marie Burnett, for the support of [R.K.S.], and [T.G.S.].

At the request of appellant, the trial court entered findings of fact and conclusions of law. In response to the trial court's judgment, appellant filed a motion for new trial, which the trial court denied. This appeal followed.

## II. STANDARD OF REVIEW

Most appealable issues in a family-law case, including a trial court's ruling on child-support arrearages, are reviewed under an abuse of discretion standard. *Beck v. Walker*, 154 S.W.3d 895, 901 (Tex. App.—Dallas 2005, no pet.). A trial court's judgment is reversed only when it appears from the record as a whole that the trial court abused its discretion. *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990). A trial court abuses its discretion as to factual matters when it acts unreasonably or arbitrarily. *Beck*, 154 S.W.3d at 901. A trial court abuses its discretion as to legal matters when it acts without reference to any guiding principles. *Id.* at 901-02 (citing *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992)).

## III. THE AGREEMENT

After the trial court entered its judgment in this case, and after the parties filed their briefs, the Texas Supreme Court issued its opinion in *Office of Attorney General of*

*Texas v. Scholer*, 403 S.W.3d 859 (Tex. 2013). Under strikingly similar facts as the case at bar, the *Scholer* Court held that: "But except for the very narrow circumstance recognized by law—the obligee's relinquishment of possession and the obligor's provision of support—he may not rely on the other parent's actions to extinguish his support duty."[4] *Id.* at 867. In support of its holding, the *Scholer* Court noted that "[a] parent's duty of support, although often characterized monetarily and used with terms like 'arrearages,' is not a debt owed to the other parent." *Id.* at 866. "The [Texas] Family

[4] The lone affirmative defense to a motion for enforcement of child support is codified in section 157.008 of the Texas Family Code, which provides the following:

    (a) An obligor may plead as an affirmative defense in whole or in part to a motion for enforcement of child support that the obligee voluntarily relinquished to the obligor actual possession and control of a child.

    (b) The voluntary relinquishment must have been for a time period in excess of any court-ordered periods of possession of and access to the child and actual support must have been supplied by the obligor.

    (c) An obligor may plead as an affirmative defense to an allegation of contempt or of the violation of community service requiring payment of child support that the obligor:

        (1) lacked the ability to provide support in the amount ordered;

        (2) lacked property that could be sold, mortgaged, or otherwise pledged to raise the funds needed;

        (3) attempted unsuccessfully to borrow the funds needed; and

        (4) knew of no source from which the money could have been borrowed or legally obtained.

    (d) An obligor who has provided actual support to the child during a time subject to an affirmative defense under this section may request reimbursement for that support as a counterclaim or offset against the claim of the obligee.

    (e) An action against the obligee for support supplied to a child is limited to the amount of periodic payments previously ordered by the court.

TEX. FAM. CODE ANN. § 157.008 (West 2014). Appellee did not allege this affirmative defense; instead, he alleged accord and satisfaction, which is not a proper affirmative defense to a motion for enforcement of child support. *See id.*; *see also Office of the Att'y Gen. of Tex. v. Scholer*, 403 S.W.3d 859, 867 (Tex. 2013).

Code characterizes child support as a duty rather than a debt." *Id.* (citing TEX. FAM. CODE ANN. §§ 154.006, .013, .128 (West 2014)). The court further explained that "'[t]he obligation which the law imposes . . . on parents to support their children is not considered a 'debt' . . . but a legal duty arising out of the status of the parties.'" *Id.* (quoting *Ex parte Hall*, 854 S.W.2d 656, 658 (Tex. 1993)). "The child's welfare underlies child support enforcement suits, and providing monetary support is part of a parent's contribution to that welfare." *Id.* "As a result, the parents' actions, either collectively or alone, cannot affect the support duty, except as provided by statute." *Id.*

Based on the holding in *Scholer*, the agreement between appellee and Tara would have no effect on the amount of child support appellee owes. We do recognize that appellant agreed to zero out appellee's $37,529.70 child-support arrearage as of the date of the purported agreement, January 29, 2001, ostensibly in exchange for the $10,000 lump-sum payment made. However, appellee's duty to support his children is not extinguished by the parties' purported agreement, especially considering that the parties did not seek court approval of the agreement until approximately ten years later. *See, e.g., Williams v. Patton*, 821 S.W.2d 141, 143 (Tex. 1991) (noting that "the legislature has . . . prohibited self-help by the obligor and obligee in prospectively modifying court-ordered child support without court approval"). As the *Scholer* Court mentioned,

> Because payment of child support reflects a parent's duty to his child, furthering the child's welfare and best interests, estoppel is not an affirmative defense to a child support enforcement action. A parent who owes that duty must diligently satisfy it. If he is displeased with access,

he may ask the court to modify or enforce the visitation order, or to hold the custodial parent in contempt for violating it. If he is unable to pay, he may seek a modification of the support order. If he believes his rights and his support obligations have been terminated, he should ensure a court order reflects that.

403 S.W.3d at 866-67 (internal citations omitted). In this case, appellee did not ensure that a court order reflected that his support obligation had been terminated at the time of the purported agreement. Accordingly, though the equities appear to weigh in favor of appellee, we cannot conclude that the parties' purported agreement eliminated appellee's child-support obligation accruing after January 29, 2001. *See id.* at 866-67; *see also Williams*, 821 S.W.2d at 143.

Based on the record and the holdings in *Scholer* and *Williams*, we must conclude that the trial court abused its discretion in eliminating appellee's child-support obligation accruing after January 29, 2001. *See Worford*, 801 S.W.2d at 109; *Beck*, 154 S.W.3d at 901; *see also Scholer*, 403 S.W.3d at 866-67; *Williams*, 821 S.W.2d at 143. We sustain appellant's issues on appeal and reverse the judgment of the trial court and remand for proceedings consistent with this opinion.

AL SCOGGINS
Justice

Before Chief Justice Gray,
        Justice Davis, and
        Justice Scoggins
Reversed and remanded
Opinion delivered and filed April 24, 2014
[CV06]