# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-16-00800-CV

**Paul D. Agarwal and Karen Natoli Maxwell, Appellants**

**v.**

**Guy Villavaso; Larry Foles; GVMF Management, Inc.;
and Newport Wildfish, GP, Inc., Appellees**

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 201ST JUDICIAL DISTRICT
### NO. D-1-GN-15-001694, HONORABLE TIM SULAK, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Appellants Paul D. Agarwal and Karen Natoli Maxwell ("the Investors") sued appellees Guy Villavaso, Larry Foles, GVMF Management, Inc., and Newport Wildfish, GP, Inc. (collectively referred to as "appellees"), asserting claims for breach of fiduciary duty and aiding and abetting the breach of fiduciary duty related to the sale of the Eddie V's/Wildfish chain of restaurants to Darden Restaurants in 2011.[1] The Investors argued that appellees "skimm[ed] off" $10 million from the sales proceeds and, instead of splitting the money among all of the chain's investors, improperly allocated that sum to GVMF. Appellees filed a motion for traditional and no-evidence

---

[1] A number of minority investors filed suit, but only Agarwal and Maxwell appealed. Further, although the Investors asserted claims for breach of contract and for breach of fiduciary duty related to the payment of bonuses to certain "key employees," they did not refer to those issues in their response to appellees' motion for summary judgment, nor do they argue on appeal that the trial court erred in granting judgment on those issues.

summary judgment. The trial court granted appellees' motion without specifying the grounds. We affirm the court's order granting summary judgment.

## Factual Summary[2]

Guy Villavaso, Larry Foles, and Larry's wife Melissa Foles founded the chain, setting up a separate corporate "operating entity" for each of the eleven Eddie V's or Wildfish restaurants. Appellees sought minority investors for the individual restaurants, and Agarwal and Maxwell invested in Eddie V's Wildfish Newport Beach, LP ("Wildfish Newport"),[3] a limited partnership established under Delaware law whose general partner was Newport Wildfish GP, Inc.

CFO Kristina Cashman explained in her sworn declaration that the eleven Eddie V's or Wildfish restaurants were all managed by Eddie V's Restaurants, Inc. ("EVR") and GVMF, which she described as "management entities." GVMF is owned by Villavaso and Melissa Foles, and Larry Foles provided all "management services for GVMF to the restaurants." Cashman averred that it was common industry practice to use such entities, that each individual restaurant signed agreements with those entities, and that the services provided by EVR and GVMF included hiring, training, human resources, accounting, purchasing, facility maintenance, and "creative control of all branding

[2] As summary judgment evidence, the parties provided sworn declarations by Villavaso and Kristina Cashman, Chief Financial Officer of Eddie V's Restaurants, Inc.; excerpts from Villavaso's, Cashman's, and Agarwal's depositions; the LP agreement of Newport Wildfish; appellees' October 12, 2011 letter to the minority investors announcing the sale; an Information Statement about the sale sent to minority investors on October 31; the Restaurant Consultant's Agreement between GVMF and Eddie V's Arboretum; the Termination Agreement that terminated all of GVMF's Restaurant Consultant's Agreements with the restaurants; and proof that the Investors cashed checks of their shares of the sale proceeds. Our recitation of the facts is taken from that evidence and the pleadings.

[3] Although each of the Investors invested in one or two additional locations, it is only Wildfish Newport that is the subject of this appeal.

2

menus, concept, decoration, promotion and advertising." GVMF's Consulting Agreement with each restaurant stated that in exchange for two percent of gross revenues, GVMF would provide its services through December 31, 2012; that GVMF was responsible for creative control over menus, the restaurant's physical appearance, and advertising and promotions; and that the agreement could be terminated by either party at any time "for any reason or no reason" with ninety days' notice.[4]

In early October 2011, Darden Restaurants agreed to pay $59.25 million to buy all of the chain's assets, including "brands, trademarks and goodwill." Cashman stated that appellees engaged an attorney and an investment banker to provide expert advice and to evaluate the various sales options and that she and Villavaso believed those individuals "possessed the professional expertise we needed to advise us on the sale." Cashman averred that the Darden offer was "the best offer by far" out of several options and that it was approved by the majority owners, general partners, and managers.[5] Cashman explained that appellees "decided that all minority investors should obtain, at a minimum, a return of their capital contributions" and therefore "allocated additional value" to Wildfish Newport and Wildfish Waterfront, the two worst-performing restaurants. Without that adjustment, investors in those two restaurants "would not have received a return of their capital contribution." Under the calculations agreed to by appellees, Agarwal "received a return of substantially all" of his investments in the three restaurants in which he had invested, as well as a profit on his investment in one high-performing location.

---

[4] The Investors have never disputed that the various agreements were substantially the same from one location to another.

[5] Cashman averred that she understood, based on advice by appellees' advisors, that those were the only consents that were required.

3

As part of the sale, $10 million was assigned to GVMF as a "management fee" intended to compensate for the cancellation of the Consulting Agreements. Cashman averred that it was standard industry practice to "value the management entities and/or cancellation of management contracts in the sale of restaurant groups," that the value assigned to GVMF was reasonable and appropriate, and that appellees used their reasonable business judgment in deciding the assignment of value. The restaurants and GVMF signed a Termination Agreement, which stated that: GVMF had contracted to provide consulting services for twenty years in exchange for two percent of each restaurant's gross revenue; the parties to the Consulting Agreements and the Termination Agreement "recognize[d] the Consulting Agreements have significant value"; Darden was requiring the chain to "effectively sell such value" by terminating the Consulting Agreements; and the parties agreed to terminate the Consulting Agreements without penalty or liability.

On October 31, 2011, appellees sent the minority investors an "Information Statement for Written Consent of Minority Holders" explaining the terms of the sale and stating that they "wanted to reach out to our minority holders to share this news, and (although not required) have them affirm the transaction." On November 29, Agarwal wrote a letter through his attorney stating that he was "withholding his consent to the proposed transaction" and that, "[b]ased on the limited information received to date, Agarwal objects to the deduction from the purchase price of the cancellation fee paid to GVMF Management, Inc." Agarwal requested copies of the Purchase and Sale Agreement, copies of agreements between GVMF and the restaurants, a list of the key employees who would receive bonuses, and a list of all other "members of the Seller." He asked for the anticipated closing date for the sale and concluded, "It is extremely important that we be

4

provided the requested documents in advance of closing with sufficient time to fully evaluate the proposed distribution of sales proceeds."

In response, appellees provided Agarwal with copies of the Purchase Agreement; the Written Consent of Majority of Interest of Equity Holders; the Leased Employees Agreement, Restaurant Managers Agreement, and Restaurant Consultants Agreement between EVR, GVMF, and Eddie V's Arboretum, which were "similar [to] or the same" as the agreements the other restaurants had with EVR and GVMF; the agreement between Eddie V's Arboretum, through its manager, GVMF, and that location's investors; a list of employees and managers who received bonuses under the terms of the sale; and a list of the equity holders and managers of the three restaurants in which Agarwal had invested. Agarwal did not communicate with appellees further, and no other minority investor expressed any reservations. In mid-December 2011, the bulk of the sale's cash proceeds were distributed to the investors, and in December 2012 and December 2013, proceeds that had been placed in escrow under the terms of the sale were distributed to the investors. All of the minority investors, including Agarwal and Maxwell, cashed their checks without objection.

In April 2015, Agarwal sued; Maxwell joined in May 2016. The Investors argued that instead of splitting the $10 million among all the investors, appellees breached their fiduciary duty and aided and abetted the breach of fiduciary duty by allocating that sum to GVMF. Appellees filed a motion for traditional and no-evidence summary judgment. In their traditional motion, in addition to attempting to establish the lack of a fiduciary duty, any breach of such a duty, and any harm to the Investors, appellees argued that they had established as a matter of law their affirmative defenses of waiver, ratification, acceptance of benefits, and quasi-estoppel and an affirmative defense under the

5

business organizations code.[6]  In their no-evidence motion, appellees asserted that there was no evidence that they owed the Investors a fiduciary duty, that such a duty was breached, or that the Investors were harmed by any such breach.

**Standard of Review**

We review a trial court's granting of summary judgment de novo, taking as true all evidence favorable to the nonmovant and indulging all reasonable inferences and resolving any doubts in the nonmovant's favor.  *Cantey Hanger, LLP v. Byrd*, 467 S.W.3d 477, 481 (Tex. 2015).  "A defendant who conclusively negates at least one of the essential elements of a cause of action or conclusively establishes an affirmative defense is entitled to summary judgment."  *Frost Nat'l Bank v. Fernandez*, 315 S.W.3d 494, 508 (Tex. 2010).  If a movant asserts multiple grounds for summary judgment and the trial court's order does not specify the grounds for granting summary judgment, we will affirm the order if any of the theories advanced are meritorious.  *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex. 2001) (quoting *Carr v. Brasher*, 776 S.W.2d 567, 569 (Tex. 1989)).  And, if an appellant does not challenge every possible ground for summary judgment, we will uphold the summary judgment on the unchallenged grounds.  *Grace v. Colorito*, 4 S.W.3d 765, 768 (Tex. App.—Austin 1999, pet. denied) (citing *Malooly Bros., Inc. v. Napier*, 461 S.W.2d 119, 121 (Tex. 1970)); *see Young v. JP Morgan Chase Bank, N.A.*, No. 03-15-00261-CV, 2016 WL 4091294, at *3

---

[6] Section 3.102 allows a governing person to rely on the advice of legal counsel, investment bankers, or others who the governing person reasonably believes to possess professional expertise. *See* Tex. Bus. Orgs. Code § 3.102; *see also* 6 Del. Code § 17-407(c) (general partner "shall be fully protected from liability to" partners if it relies in good faith upon opinion presented by "any other person as to matters the general partner reasonably believes are within such other person's professional or expert competence").

6

(Tex. App.—Austin July 28, 2016, pet. ref'd) (mem. op.) (citing *Star-Telegram, Inc. v. Doe*, 915 S.W.2d 471, 473 (Tex. 1995); *Malooly Bros.*, 461 S.W.2d at 121).

**Discussion**

Appellees sought summary judgment on the affirmative defenses of waiver, ratification, acceptance of benefits, and quasi-estoppel, arguing that the Investors should not be able to sue after implicitly agreeing to the sale. Appellees noted that only Agarwal made any preliminary objections, that he cashed his checks after receiving the information he requested, and that none of the investors raised any further complaints related to the terms of the sale until filing suit almost four years later. They also noted that the terms of the sale made special allocations of value to Wildfish Waterfront and Wildfish Newport, the two poorest performing restaurants in the chain, in order to ensure that investors in those restaurants received at least a full return of their investment.

The supreme court has noted that "the doctrines of waiver and estoppel are frequently referenced together, but they are different." *Ulico Cas. Co. v. Allied Pilots Ass'n*, 262 S.W.3d 773, 778 (Tex. 2008). Waiver is a party's intentional relinquishment of a known right or its intentional conduct inconsistent with the assertion of that right, and its elements are: "(1) an existing right, benefit, or advantage held by a party; (2) the party's actual knowledge of its existence; and (3) the party's actual intent to relinquish the right, or intentional conduct inconsistent with the right." *Id.* "Silence or inaction, for so long a period as to show an intention to yield the known right, is also enough to prove waiver." *Tenneco Inc. v. Enterprise Prods. Co.*, 925 S.W.2d 640, 643 (Tex. 1996). "Waiver is ordinarily a question of fact," but if "the facts and circumstances are admitted or clearly established, however, the question becomes one of law." *Id.*

7

"Quasi-estoppel . . . is a term applied to certain legal bars, such as ratification, election, acquiescence, or acceptance of benefits," *Forney 921 Lot Dev. Partners I, L.P. v. Paul Taylor Homes, Ltd.*, 349 S.W.3d 258, 268 (Tex. App.—Dallas 2011, pet. denied), and it applies "when it would be unconscionable to allow a person to maintain a position inconsistent with one in which he acquiesced," *Lopez v. Munoz, Hockema & Reed, L.L.P.*, 22 S.W.3d 857, 864 (Tex. 2000). In other words, a party may not accept the benefits of a transaction and then later take "an inconsistent position to avoid corresponding obligations or effects." *Lindley v. McKnight*, 349 S.W.3d 113, 131 (Tex. App.—Fort Worth 2011, no pet.). Thus, when it is necessary to apply quasi-estoppel to avoid unconscionability, a party will be barred "from asserting, to another's disadvantage, a right inconsistent with a position previously taken."[7] *Lopez*, 22 S.W.3d at 864.

In their response to appellees' motion for summary judgment, the Investors did not mention or address appellees' asserted affirmative defenses of ratification, waiver, or acceptance of benefits, nor were they required to do so, as appellees had the burden of proof. *See Federal Deposit Ins. Corp. v. Lenk*, 361 S.W.3d 602, 609 (Tex. 2012). However, the Investors do have the burden of challenging all possible summary judgment grounds on appeal. *See Grace*, 4 S.W.3d at 768.

---

[7] The elements of estoppel are (1) a false representation or concealment of material facts by a party (2) who has actual or constructive knowledge of the facts, (3) made with the intention that it should be acted on, to a party (4) who lacks the knowledge of or the means of learning the facts and (5) who relies or acts upon the misrepresentation or concealment to his prejudice. *In re A.L.G.*, 229 S.W.3d 783, 786 (Tex. App.—San Antonio 2007, no pet.), *disapproved of on other grounds by Office of Atty. Gen. of Tex. v. Scholer*, 403 S.W.3d 859, 867 (Tex. 2013). "Misrepresentation by one party, and reliance by the other, are not necessary elements of quasi-estoppel." *Id*.; *Vessels v. Anschutz Corp.*, 823 S.W.2d 762, 765 (Tex. App.—Texarkana 1992, writ denied); *El Paso Nat'l Bank v. Southwest Numismatic Inv. Grp., Ltd.*, 548 S.W.2d 942, 948 (Tex. Civ. App.—El Paso 1977, no writ) (discussing development of doctrine of quasi-estoppel).

In their appellate brief, the Investors' entire argument related to those asserted affirmative defenses is as follows:

> **D. The trial court erred in granting summary judgment on [Appellees'] affirmative defense of receipt of benefits/quasi-estoppel/waiver when Agarwal immediately challenged the transaction giving rise to this appeal.**
>
> In their motions for summary judgment, Appellees contended that [the Investors] waived their right to bring this suit by failing to object to the sale to Darden and allocation of sales proceeds. This claim is contradicted by the record as Agarwal's attorney sent a letter on Agarwal's behalf challenging the sale and specifically the "cancellation fee paid to GVMF Management, Inc." on November 29, 2011. Accordingly, the trial court erred in granting summary judgment on this ground.

The Investors provide no authority or discussion of the law on waiver and quasi-estoppel or how Agarwal's initial objection raised a material issue of fact as to appellees' asserted affirmative defenses. Therefore, the Investors have not sufficiently briefed the issue of whether summary judgment was properly granted on appellees' affirmative defenses, *see* Tex. R. App. P. 38.1(i); *Crooks v. M1 Real Estate Partners, Ltd.*, 238 S.W.3d 474, 485 (Tex. App.—Dallas 2007, pet. denied); *Haas v. George*, 71 S.W.3d 904, 914 (Tex. App.—Texarkana 2002, no pet.), and we may affirm the granting of summary judgment on that basis, *see Grace*, 4 S.W.3d at 768.

Furthermore, Agarwal's letter made an initial objection to the GVMF cancellation fee "*[b]ased on the limited information received to date*" and then requested several documents so that he and his attorneys "can *further evaluate* the proposed transaction." (Emphases added.) Agarwal explained that he needed the documents quickly so that he had "sufficient time *to fully evaluate the proposed distribution* of sale proceeds." (Emphasis added.) In response, appellees provided copies of the requested documents, and Agarwal raised no further protest and, along with the other minority

9

investors, instead cashed the checks he received under the sale in 2011, 2012, and 2013. Because of that silence and acceptance of the sales proceeds, Cashman averred, "I honestly believed that neither Mr. Agarwal nor any other Plaintiff had any objection to the Darden Sale and distribution of proceeds."

The Investors accepted the benefits of the sale over a period of more than three years, cashing checks in 2011, 2012, and 2013, and did not raise any protest until filing suit nearly four years later. Agarwal did not object further after receiving the information he requested, and appellees could reasonably have concluded that those documents had assuaged his preliminary concerns. Based on the summary judgment evidence and the lack of briefing by the Investors, we hold that the Investors have not shown error in the trial court's granting summary judgment on appellees' affirmative defenses of waiver and quasi-estoppel. *See Lopez*, 22 S.W.3d at 864; *Tenneco Inc.*, 925 S.W.2d at 643-44; *Lindley*, 349 S.W.3d at 132-33.

### Conclusion

Due to our holding related to appellees' affirmative defenses, we need not consider the other grounds put forth by the Investors. *See Critical Health Connection, Inc. v. Texas Workforce Comm'n*, 338 S.W.3d 758, 768 n. 9 (Tex. App.—Austin 2011, no pet.). We affirm the trial court's order granting summary judgment in favor of appellees.

_____

David Puryear, Justice

Before Justices Puryear, Pemberton, and Goodwin

Affirmed

Filed: July 13, 2017