# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-22-00792-CV

---

**Christopher Rogers, Appellant**

**v.**

**Amy Rogers, Appellee**

---

### FROM THE 126TH DISTRICT COURT OF TRAVIS COUNTY
### NO. D-1-FM-11-001785, THE HONORABLE JAN SOIFER, JUDGE PRESIDING

---

## M E M O R A N D U M   O P I N I O N

Christopher Rogers, acting pro se, appeals from the trial court's order confirming child support arrears.[1]  *See* Tex. Fam. Code § 157.263 (authorizing trial court to "confirm amount of arrearages and render cumulative money judgments" for accrued child and medical support owed).[2]  In fifteen issues, Christopher does not dispute the cumulative amount of child and medical support that he was court-ordered to pay to Amy but argues that the trial court should have offset the cumulative amounts in their entirety by the value of certain real property that he owned.  *Id.* § 157.263(b-3) (authorizing court to "allow a counterclaim or offset as

---

[1]  Because they have the same surname, we refer to the parties by their first names.

[2]  "A cumulative money judgment" for child support arrearages includes:  "(1) unpaid child support not previously confirmed; (2) the balance owed on previously confirmed arrearages or lump sum or retroactive support judgments; (3) interest on the child support arrearages; and (4) a statement that it is a cumulative judgment for the amount of child support owed."  Tex. Fam. Code § 157.263(b); *see In re A.R.G.*, 645 S.W.3d 789, 798 (Tex. App.—San Antonio 2022, no pet.) (stating amounts that are included in cumulative money judgment for child support arrearages).

provided by this title"). For the following reasons, including that Christopher did not present sufficient evidence to support an offset, we affirm the trial court's order.

## BACKGROUND

The parties were divorced in 2009 and appointed joint managing conservators of their three minor children. *See In re Rogers*, 370 S.W.3d 443, 444 (Tex. App.—Austin 2012, orig. proceeding) (providing factual background). In 2012, the trial court signed a final modification order that named Amy as the children's managing conservator and Christopher as the possessory conservator and ordered Christopher to pay increased child and medical support. The court found that Christopher was "intentionally underemployed" and that he had "additional resources in the form of land in Maine and other states totaling at least $425,000.00." Christopher appealed the final modification order to this Court, but we dismissed his appeal for want of prosecution. *See Rogers v. Rogers*, No. 03-13-00010-CV, 2013 Tex. App. LEXIS 10358, at *1–2 (Tex. App.—Austin Aug. 16, 2013, no pet.) (mem. op.).

In 2015, Amy filed a motion for enforcement, alleging that Christopher had failed to pay the court-ordered child support, and Christopher filed a petition to decrease the amount of child support that he was required to pay. Following a hearing in May 2015, the trial court signed an order in February 2016, finding that Christopher had failed to make child and medical support payments; holding him in contempt for failing to make the payments; ordering that "a receiver be appointed over all property owned by Christopher Rogers in the states of Maine, Georgia, Florida, Louisiana, and in any other states where she may discover property"; and appointed a named person to be the "receiver of all Christopher Rogers's real estate where-ever located." In the order, the trial court stated that it "heard evidence from Christopher Rogers that

2

he owns real property in the state of Maine but that he does not control it because it is controlled by his brother" and ordered Christopher to revoke his brother's power of attorney over the property.[3]

In June 2016, the trial court signed an "Appointment of Receiver." The named person was "hereby appointed receiver for all property belonging to Christopher Rogers for the purpose of enforcing the judgments of this court for child support, fees, and attorney's fees." The court authorized the named person "to do all acts concerning real property of Christopher Rogers that he might do himself acting in person or by agent," including that "she may sell the property, lease it, rent it, or encumber it" and "employ agents where any property is located and to do all other acts necessary or convenient to carry out her tasks."

In 2021, the Office of the Attorney General (OAG), representing the State of Texas, filed a motion to confirm arrearage, asking the trial court to enter a judgment confirming the amount of child and medical support arrearages and accrued interest. *See* Tex. Fam. Code §§ 157.001–.002, .263; *see also id.* §§ 231.001 (designating attorney general as state's Title IV-D agency), .101(a)(5) (stating services that Title IV-D agency may provide including enforcement of child and medical support orders). Attached to the motion was a financial activity report as of January 2021 showing the accrual of amounts that Christopher owed and payments that he had made. *See id.* § 157.002(3) (stating that motion for enforcement of child support "may include as an attachment a copy of a record of child support payments maintained by the Title IV-D registry").

---

[3] During the trial court's hearing on the Office of the Attorney General's motion to confirm arrearage, there was evidence that the property had been owned by Christopher's deceased father and that the property had been part of his father's estate.

In his answer to the OAG's motion, Christopher denied that he owed any alleged child or medical support arrearage. He alleged that in 2015: (i) the trial court "ordered multiple real properties be taken from [him] and given to Amy Rogers"; (ii) the combined value of the properties at that time "ranged from $779,450.00 to $1,433,450.00"; (iii) the properties were willed to him by his father and located in Maine, Florida, Louisiana, and Georgia; (iv) the trial court "instructed [him] to have no further involvement with the properties, including inquiries"; and (v) "[t]o date, no information about the properties had been reported by Amy Rogers, nor has the Attorney General attributed value despite knowledge of the 2015 ruling." Christopher sought for the trial court to confirm the value of the property "received by Amy Rogers on May 13, 2015," to "order the defect in alleged arrearages be stricken from the record and accrued interest from the defect be eliminated," and to order the OAG to reimburse him for the excess received based on the property's value.

In August 2021, the trial court held a hearing on the OAG's motion to confirm arrearage. The witnesses were Christopher, Amy, a former attorney of Amy, and Amy's current attorney who testified about attorney's fees. The exhibits included the OAG's financial activity report detailing the accrual of amounts that Christopher owed for child and medical support and payments that he had made from November 2012 to August 2021 and showing the cumulative balances that he owed. *See* Tex. Fam. Code § 157.002(3).

Christopher did not dispute the amounts of accrued child and medical support that were reflected on the OAG's financial activity report. His position was that those amounts should have been entirely offset based on the value of his property that was "seized" by the State. He contended that "the State seized property from [him] in multiple states" in May 2015 and that "[n]one of these properties have been incorporated into the Attorney General's registry."

4

Christopher relied on the trial court's 2015 appointment of a receiver[4] and alleged that his property was lost after it was seized because of "inaction." When asked by the trial court if he had "any testimony from any person that the receiver seized the property," Christopher testified that he had "never heard anything whatsoever from the receiver or seen any documents whatsoever."

The exhibits included a March 2016 "Notice of Impending Automatic Foreclosure" from the State of Maine based on a property tax lien. The notice stated that if the tax lien was foreclosed, the municipality would own the property. The exhibits also included Christopher's September 2020 noncustodial parent's certification of direct payments with a cover letter addressed to the OAG. In the certification, Rogers certifies that the "total of all direct payments" to Amy was $1,049,450.00, which was based on the value of properties in Maine, Florida, Louisiana, and Georgia that he had owned. In his cover letter, Rogers stated that pursuant to the trial court's May 2015 order, his real property in four states was seized and delivered to the possession of Amy, that the "properties existed as unliquidated assets of the estate of [his] deceased father who died in 2010," and that the "combined market value of the properties" at the time the trial court's May 2015 order "was issued was $1,049,450.00."

The OAG disputed Christopher's position and presented evidence that neither the OAG nor Amy had received Christopher's property or any payments from the property. Amy's former attorney testified about trying to locate property in Maine, being "unable to recover anything," and discovering that a Maine township had already foreclosed on the property and owned it. He testified that "there was nothing to get." The attorney was aware that the property

---

[4] Although it does not impact our analysis, the record reflects that the hearing was in May 2015 and that the trial court signed the order appointing the receiver in 2016.

had belonged to Christopher's deceased father and that there was a probate proceeding of his father's estate in Maine, but the attorney was unable to take steps "to seize the property."

Amy testified that she had not received any money or property from the trial court's appointment of a receiver and that she had not received any money or property directly from Christopher. Her understanding of what happened in Maine was that "the township in Maine foreclosed on [Christopher's] property" and in response to questions from Christopher, she explained that she "didn't have money to fight [his] foreclosure for [him]" and that he "never got any of [his] stuff out of probate" "so no one could get to [his] properties." The OAG also represented to the trial court that it had not filed a lien against Christopher's out-of-state properties and that the only lien it had filed was on a bank account. At the conclusion of the hearing, the trial court ruled in favor of the OAG and Amy, explaining that it did not have evidence that the State "seized anything" or "received any money or property that belonged to [Christopher]" or that would authorize "any credit" against the amounts that Christopher owed in arrearages.

In October 2021, the trial court held a hearing on Amy's motion to reopen the evidence as to appellate attorney's fees. Amy's current attorney testified about appellate attorney's fees if Christopher decided to appeal. The trial court took the matter under advisement and, in September 2022, signed its order confirming child support arrears. The trial court found that Christopher was in arrears on child support in the amount of $122,693.95 and medical support in the amount of $38,819.13, granted a cumulative judgment against him in favor of the OAG on those amounts with interest, and awarded attorney's fees, including conditional appellate attorney's fees. The trial court also signed findings of fact and conclusions of law, making findings as to the amounts of arrearages and, relevant here, as to Christopher's

6

property. The trial court found, "Neither the Office of the Attorney General nor Amy Rogers, nor an agent or assign of either received any of Christopher Roger's real property in Maine or any other state."

Christopher filed a motion for new trial, which the trial court denied. This appeal followed.

## ANALYSIS

### Standard of Review

We review the trial court's order confirming child support arrearages for abuse of discretion. *See In re A.R.G.*, 645 S.W.3d 789, 797 (Tex. App.—San Antonio 2022, no pet.); *see also Ochsner v. Ochsner*, 517 S.W.3d 717, 718 (Tex. 2016). "A trial court abuses its discretion when it acts arbitrarily or unreasonably, without reference to guiding rules or principles." *Iliff v. Iliff*, 339 S.W.3d 74, 78 (Tex. 2011) (citing *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990) (per curiam); *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985)). "A trial court also abuses its discretion by failing to analyze or apply the law correctly." *Id.* (citing *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992)).

"Under this standard, legal and factual sufficiency of the evidence are not independent grounds for asserting error but are relevant factors in determining whether the trial court abused its discretion." *Coburn v. Moreland*, 433 S.W.3d 809, 823 (Tex. App.—Austin 2014, no pet.) (citing *Zeifman v. Michels*, 212 S.W.3d 582, 587 (Tex. App.—Austin 2006, pet. denied)). "In determining whether the trial court abused its discretion, we consider whether the trial court had sufficient evidence upon which to exercise its discretion and, if so, whether it erred in the exercise of that discretion." *Id.* (citing *In re W.C.B.*, 337 S.W.3d 510, 513 (Tex.

7

App.—Dallas 2011, no pet.)).  "We consider only the evidence most favorable to the trial court's ruling and will uphold its judgment on any legal theory supported by the evidence."  *Id.* (citing *Worford*, 801 S.W.2d at 109); *see id.* at 823–24 (explaining that reviewing courts defer to trial court's factual resolutions and "any credibility determinations that may have affected those resolutions").  "An abuse of discretion does not occur as long as some evidence of a substantive and probative character exists to support the trial court's decision."  *Zeifman*, 212 S.W.3d at 587 (citing *In re P.M.B.*, 2 S.W.3d 618, 622 (Tex. App.—Houston [14th Dist.] 1999, no pet.)).

In this case, the trial court made findings of fact and conclusions of law.  We review the trial court's findings for factual and legal sufficiency of the evidence under the same standards as applied in reviewing the sufficiency of the evidence supporting a jury's answer.  *Kramer v. Kastleman*, No. 03-13-00133-CV, 2017 Tex. App. LEXIS 10326, *5 (Tex. App.—Austin Nov. 3, 2017, pet. denied) (mem. op.) (citing *Ortiz v. Jones*, 917 S.W.2d 770, 772 (Tex. 1996) (per curiam); *Anderson v. City of Seven Points*, 806 S.W.2d 791, 794 (Tex. 1991)); *see City of Keller v. Wilson*, 168 S.W.3d 802, 827–28 (Tex. 2005) (describing legal sufficiency standard of review); *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986) (per curiam) (describing factual sufficiency standard of review).  "We review a trial court's conclusions of law de novo to determine their correctness and will uphold conclusions if the judgment can be sustained on any legal theory supported by the evidence."  *Kramer*, 2017 Tex. App. LEXIS 10326, at *5–6 (citing *BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002)).

**Christopher's Issues**

In the issues section of his brief, Christopher states his issues as follows:

1. Did the trial court err overlooking "No Notice" actions?

2.  Did the trial court err overlooking lack of timeliness of Appellee Amy Rogers and by the state's receiver?

3.  Did the trial court err in permitting interested party to oversee receivership in lieu of the court appointed receiver?

4.  Did the trial court err interpreting prior instruction by the Court that any interference with properties or order by appellant would result in incarceration as a denial of Appellant's rights?

5.  Did the trial court err in determining no taking of properties had occurred?

6.  Did the trial court err in determining that the taking of appellant's private properties, with the state's foreseeable enrichment, was not an act of eminent domain?

7.  Did the trial court err in determining the state had not waived sovereign immunity?

8.  Did the trial court err in determining appellant's right to counterclaim the state's arguments in seeking relief?

9.  Did the trial err by failing to determine fair market values of appellant's properties at the time of taking?

10. Did the trial court err in interpreting out of registry activity submitted by Appellant respecting *Ochsner v Ochsner*?

11. Did the trial court err by assessing a child and medical support arrearage against Appellant?

12. Did the trial court err in interpreting *Timbs v Indiana* respecting excessive takings?

13. Did the trial court err in determining Appellant's 5th, 8th and 14th Amendment rights had not been violated?

14. Did the trial court err interpreting 42 U.S. Code § 1983 and appellant's rights therein?

15. Did the trial court err by awarding Appellee Amy Rogers attorney fees and appellate attorney fees?

**Briefing Requirements**

As a threshold matter, the OAG argues that Christopher has waived his issues to the extent that he does not address them in the argument section of his brief and that he fails to support factual assertions with direct references to the appellate record or to cite the appellate record in the argument section of his brief. *See* Tex. R. App. P. 38.1(g) (requiring statement of facts to "be supported by record references"), (i) (requiring appellant's brief to "contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record"); *LMP Austin English Aire, LLC through Lafayette English Partner, LLC v. Lafayette English Apartments, LP*, 654 S.W.3d 265, 291 (Tex. App.—Austin 2022, no pet.) (stating that party waives argument due to inadequate briefing when it fails to properly cite record or provide meaningful argument).

Christopher's argument section of his brief is divided into eight subsections in which he argues that the trial court erred by: (i) not deciding that his properties were taken; (ii) not concluding that the taking of his properties was excessive; (iii) not concluding that his property rights were violated pursuant to the 5th and 14th Amendments of the U.S. Constitution and Article 1, Section 19 of the Texas Constitution; (iv) "ruling that an interested party may oversee receivership in lieu of the court appointed receiver"; (v) not deciding that the State of Texas has waived sovereign immunity against his claims or counterclaims; (vi) misinterpreting his rights under section 1983 and his right to seek relief therein, *see* 42 U.S.C. § 1983; (vii) assessing a child and medical arrearage against him; and (viii) awarding Amy attorney's fees, including appellate attorney's fees.

We must hold Christopher to the same standards as parties represented by counsel. *See Shockley v. Yalk*, No. 07-22-00128-CV, 2023 Tex. App. LEXIS 938, at *2 (Tex.

10

App.—Amarillo Feb. 14, 2023, no pet.) (mem. op.) (explaining that "pro se litigant is held to the same standard as an attorney and must comply with the Texas Rules of Appellate Procedure"); *E.T. v. Texas Dep't of Family & Protective Servs.*, No. 03-15-00274-CV, 2015 Tex. App. LEXIS 10072, *14 (Tex. App.—Austin Sept. 29, 2015, no pet.) (mem. op.) (holding "pro se litigants to the same standards as licensed attorneys and requir[ing] them to comply with the applicable rules of procedure" (citing *Wheeler v. Green*, 157 S.W.3d 439, 444 (Tex. 2005) (per curiam))); *see Mansfield State Bank v. Cohn*, 573 S.W.2d 181, 184–85 (Tex. 1978) (explaining that pro se litigants are subject to same procedural rules "or else they would be given an unfair advantage over litigants represented by counsel").

We, however, also must construe briefs "liberally, but reasonably so that the right to appeal is not lost by waiver." *Lion Copolymer Holdings, LLC v. Lion Polymers, LLC*, 614 S.W.3d 729, 733 (Tex. 2020); *see id.* (instructing courts to consider "the arguments, evidence, and citations relied on by those parties to determine which issues the parties intended to and actually briefed" when considering waiver (citations omitted)). Construing Christopher's briefing under this standard, we address his issues as best as we can. *See id.*; *Onkst v. Onkst*, No. 03-15-00636-CV, 2017 Tex. App. LEXIS 5514, at *4 (Tex. App.—Austin June 16, 2017, no pet.) (mem. op.) (liberally construing brief and addressing issues raised by appellant "to the extent that we are able to divine his arguments"); *see also Housing Auth. of City of Austin v. Elbendary*, 581 S.W.3d 488, 491 n.1 (Tex. App.—Austin 2019, no pet.) (construing "pro se filings liberally and with patience 'so as to obtain a just, fair and equitable adjudication of the parties' rights'" (quoting *Veigel v. Texas Boll Weevil Eradication Found., Inc.*, 549 S.W.3d 193, 195 n.1 (Tex. App.—Austin 2018, no pet.))).

11

**Challenges to Arrearages**

Based on our review of Christopher's brief, his first through sixth and ninth through thirteenth issues primarily challenge the trial court's determination of the cumulative amount of child and medical support arrearages. He does not appear to contest the amount of child and medical support that had accrued as of August 2021. His challenges are directed to the trial court's decision not to offset the value of his property as of May 2015 against the arrearages. Christopher argues that "the state took, controlled, mis-administered and lost Appellant's properties" and that "no arrearage exists" because of "the state's taking action" and "property valuations"—which he contends was over $1.4 million—"at the time of taking." As support for this position, Christopher relies on the trial court's alleged instruction to him in May 2015 that "any interference with the properties or the order would result in [his] incarceration" and his September 2020 noncustodial parent's certification of direct payments that he submitted to the OAG. Based on his valuation of his properties in Maine, Florida, Louisiana, and Georgia, Rogers certified that the "total of all direct payments" was $1,049,450.00.

To the extent Christopher seeks to challenge the trial court's orders from 2015 or 2016 in the prior enforcement proceeding, we do not have jurisdiction to consider those challenges because he did not timely appeal. *See* Tex. R. App. P. 26.1(a) (generally requiring notice of appeal to be filed within thirty days after judgment is signed). Further, Christopher's issues appear to hinge on the transfer of ownership or control of his property in 2015 or 2016, but the trial court's appointment of a receiver in the enforcement proceeding did not equate with the transfer of property ownership and, other than Christopher's testimony, there was no evidence that his out-of-state properties were controlled by or transferred to the receiver, Amy, or the OAG. *See generally* Tex. Civ. Prac. & Rem. Code §§ 64.001–.056 (addressing procedures

12

applicable to receivers); *see id.* § 64.031 (authorizing receiver, subject to control of court, to "take charge and keep possession of the property"); *Five Star Glob., LLC v. Hulme*, No. 05-20-00940-CV, 2021 Tex. App. LEXIS 5934, at *6 (Tex. App.—Dallas July 26, 2021, no pet.) (mem. op.) (explaining that receiver is "neutral person appointed by the court" who "'is focused on the protection of property or funds that are the subject of the case'" (quoting *Chapa v. Chapa*, No. 04-12-00519-CV, 2012 Tex. App. LEXIS 10702, at *10–11 (Tex. App.—San Antonio Dec. 28, 2012, no pet.) (mem. op.))).

We also observe that the available defenses to child support arrearages are limited. *See* Tex. Fam. Code §§ 157.008 (stating that obligor may plead as affirmative defense to motion for enforcement of child support that "the obligee voluntarily relinquished to the obligor actual possession and control of a child"), .263(b-3) (authorizing court to "allow a counterclaim or offset as provided by this title"); *Office of the Att'y Gen. v. Scholer*, 403 S.W.3d 859, 863 (Tex. 2013) (stating that "[a]lthough obligor may counterclaim or receive an offset for amounts actually paid, he has no other defenses to the claim" except affirmative defense in Section 157.008). And to the extent that Christopher argues that there was a regulatory taking of his property or his constitutional rights were violated, Christopher has not cited, and we have not found, evidence in the record that would support that there was a taking of his property or authority that would support that the trial court violated his constitutional rights when it did not offset his past-due support obligations by his valuation of his properties. *See City of Austin v. Whittington*, 384 S.W.3d 766, 772–73 (Tex. 2012) (describing procedure for taking of property and explaining that condemned property must be taken for public use).

Christopher cites *Cedar Point Nursery v. Hassid*, 141 S. Ct. 2063 (2021), as support for his position that his property was taken, but the analysis in that case does not apply

here, *see id.* at 2071–72 (explaining that "government commits a physical taking when it uses its power of eminent domain to formally condemn property" or when it occupies property and that regulatory taking of property occurs when government "imposes regulations that restrict an owner's ability to use his own property"). There was evidence that a township in Maine foreclosed on one of his properties based on a property tax lien, but foreclosure for failure to pay property taxes is not a regulatory taking of property. *See, e.g.*, Tex. Const. art. VIII, § 15 (authorizing seizure and sale of property for payment of tax); Tex. Tax Code § 34.01 (addressing sale of property "pursuant to foreclosure of a tax lien"). Christopher also cites *Timbs v. Indiana*, 139 S. Ct. 682 (2019), to support his position that "the taking was excessive," but that case concerns excessive fines in violation of the 8th Amendment and its analysis does not impact our analysis of the trial court's order determining the cumulative arrearages without assessing fines against Christopher. *See id.* at 686 (stating that "protection against excessive fines guards against abuses of government's punitive or criminal-law-enforcement authority").

To the extent that Christopher argues that there is no arrearage because the receiver delayed acting or did not properly perform her duties as a receiver or was improperly overseen by Amy's former attorney, he has not cited, and we have not found, authority or evidence in the record that would support that Amy's former attorney acted improperly or that the OAG and Amy would be somehow responsible or liable for the receiver's inaction or failure to perform her duties.[5] *See, e.g.*, *Glasstex, Inc. v. Arch Aluminum & Glass Co.*,

---

[5] As the trial court explained to Christopher at the hearing, "the receiver acts as an arm of the court. The receiver's actions are not attributed to either Ms. Rogers or to the Attorney General's Office, nor are they attributed to you." The trial court continued, "[U]nless you have some case law that tells me that somehow I can attribute the bad acts or failure to act to the receiver, it doesn't change the fact that the property never got transferred to the receiver or sold or – money transferred to the State or Ms. Rogers."

14

No. 13-07-00483-CV, 2016 Tex. App. LEXIS 1869, at *10–11 (Tex. App.—Corpus Christi–Edinburg Feb. 25, 2016, no pet.) (mem. op.) (addressing claims asserted against court-appointed receiver). Christopher cites Section 64.021 of the Texas Civil Practice and Remedies Code, but that section only applies to a person who is appointed a "receiver for property that is located entirely or partly in the state" and prohibits the receiver from being "a party, attorney, or other person interested in the action for appointment of a receiver." *See* Tex. Civ. Prac. & Rem. Code § 64.021. The section does not apply to a receiver who is appointed for out-of-state property, and it does not address or prohibit interactions between a party or the party's attorney with a receiver.

We recognize that if there was evidence to support an offset, the trial court was authorized to offset direct payments that Christopher made from the amount of cumulative arrearages. *See* Tex. Fam. Code § 157.263(b-3) (allowing offset against arrearage as provided in title); *Ochsner*, 517 S.W.3d at 718 (stating that trial court in child-support enforcement proceeding "may consider evidence of direct payments like those that were undisputedly made here when confirming the amount of arrearages"). But the trial court's findings included that the OAG and Amy had not "received any of Christopher Rogers's real property in Maine or any other state." This finding is supported by Amy's testimony that she had not received anything from the receiver, the financial activity report showing the balance of accrued child and medical support that Christopher owed, and Amy's former attorney's testimony about his unsuccessful efforts concerning Christopher's property. *See Kramer*, 2017 Tex. App. LEXIS 10326, *5 (reviewing trial court's findings for sufficiency of evidence under same standards as applied in reviewing sufficiency of evidence supporting jury's answer). Thus, we conclude that the trial court acted within its discretion when it did not offset any amounts for direct payments from the

amounts that Christopher owed for child and medical support. *See Zeifman*, 212 S.W.3d at 587 (stating that "abuse of discretion does not occur as long as some evidence of a substantive and probative character exists to support the trial court's decision").

For these reasons, we overrule Christopher's first through sixth and ninth through thirteenth issues.

**Sovereign Immunity and Section 1983**

In his seventh, eighth, and fourteenth issues, Christopher argues that the trial court erred in determining that the State had not waived sovereign immunity against his claims and counterclaims, his rights to a counterclaim, and in "[mis]interpreting 42 U.S. Code § 1983 and Appellant's rights and relief therein." In a post-hearing brief to the trial court in response to Amy's motion to request attorney's fees as a prerequisite to appeal, Christopher cited and quoted Section 1983 as controlling law. *See* 42 U.S.C. § 1983. The trial court, however, did not grant Amy's request for attorney's fees as a prerequisite to appeal, and Christopher has not otherwise provided argument as to the applicability of Section 1983 here.

Christopher also has not cited a trial court ruling in the record as to the State's sovereign immunity. The OAG, the designated IV-D agency in Texas, is authorized to bring these types of suits for the recovery of child support arrearage, *see* Tex. Fam. Code §§ 231.001, .101(a) (describing services that Title IV-D agency may provide, including enforcement, collection, and distribution of child support payments); *Scholer*, 403 S.W.3d at 862 (addressing OAG's powers as designated Title IV-D agency), and a respondent may counterclaim or receive an offset for amounts actually paid, *see* Tex. Fam. Code § 157.263(b-3); *Scholer*, 403 S.W.3d at 863. The trial court did not find that the State had sovereign immunity from Christopher's claim

for an offset but that he had failed to present sufficient evidence to support the offset. We overrule his seventh, eighth, and fourteenth issues.

**Challenge to Award of Attorney's Fees**

In his fifteenth issue, Christopher argues that the trial court erred in awarding Amy attorney's fees and appellate attorney's fees. He does not challenge the amount of attorney's fees awarded but argues that attorney's fees were not available because Amy did not plead or present evidence concerning the "safety and welfare" of the children. But in the context of an order awarding a cumulative judgment for child support arrearages, the Texas Family Code expressly authorizes the trial court to order the respondent to pay the movant's "reasonable attorney's fees and all court costs in addition to the arrearages" if the trial court "finds that the respondent has failed to make child support payments." *See* Tex. Fam. Code § 157.167(a); *Taylor v. Speck*, 308 S.W.3d 81, 83, 87–88 (Tex. App.—San Antonio 2010, no pet.) (in appeal from order awarding cumulative judgment for child support arrearages, observing that attorney's fees were mandated under Section 157.167 of Texas Family Code); *see also* Tex. Fam. Code § 157.162(b) (authorizing award of costs and reasonable attorney's fees to petitioner even if trial court finds that respondent is not in contempt); *cf. id.* § 105.001(a)(5) (authorizing trial court to make *temporary orders* "for safety and welfare of the child," including "for payment of reasonable attorney's fees and expenses" (emphasis added)).

Christopher also argues that the trial court should not have reopened the evidence to allow the testimony on appellate attorney's fees, but as he recognizes, it was within the trial court's discretion to do so. *See* Tex. R. Civ. P. 270 (authorizing trial court to permit additional evidence at any time "[w]hen it clearly appears to be necessary to the due administration of

justice").  Given that the Texas Family Code authorizes the award of attorney's fees, we cannot conclude that the trial court abused its discretion in reopening the evidence as to appellate attorney's fees.  We overrule Christopher's fifteenth issue.

## CONCLUSION

Having overruled Christopher's issues, we affirm the trial court's order.

_____

Rosa Lopez Theofanis, Justice

Before Chief Justice Byrne, Justices Triana and Theofanis

Affirmed

Filed:   October 31, 2023